IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

## EASTERN DIVISION.

KNOXVILLE, SEPTEMBER TERM, 1901.

SANDS *v.* SOUTHERN RY. CO.

(*Knoxville.* September 21, 1901.)

1. DEMURRER TO EVIDENCE. *Properly sustained, when.*

A demurrer to evidence is properly sustained when, in an action against a railroad company for personal injuries, the evidence shows that the plaintiff, a bright and intelligent boy of sixteen years, was injured in leaping from a freight train moving at the rate of eighteen miles per hour, on which he had stolen a ride in known violation of the rules of the company, without the consent or knowledge of the conductor, by a collusive and unauthorized arrangement with a brakeman, to whom he paid a nominal fare. These facts show a case of contributory neg-

Sands *v.* Southern Ry. Co.

ligence on the part of the plaintiff that defeats his action. (*Post, pp. 3-6, 10*).

2. SAME.  *Comes to late, when.*

A demurrer to evidence by the defendant comes too late that is interposed after the demurrant has opened his evidence. (*Post, p. 6.*)

Case cited: Summers *v.* Railroad, 96 Tenn., 459.

3. SAME.  *Not defeated by evidence called out by demurrant on cross-examination.*

Pertinent evidence elicited on cross-examination of the plaintiff's witness, though relating to a matter not inquired about in the examination in chief—*e. g.*, the introduction and proof of a rule of the defendant on cross-examination of plaintiff's witness in a suit against a railroad company for personal injuries, is treated as plaintiff's evidence insofar that it will not defeat a demurrer to the evidence by the defendant.  (*Post, pp. 6-10.*)

4. RAILROADS.  *Trespassers on trains.*

A person who, in known violation of the rules of the company forbidding it, steals a ride on a freight train without the conductor's consent or knowledge, under a collusive and unauthorized arrangement with a brakeman, is not a passenger, but a trespasser, to whom the company owes no duty except to abstain from wanton and willful injury.  (*Post, pp. 10-12.*)

Cases cited: Railroad *v.* Haley, 94 Tenn., 383; Railroad *v.* Meacham, 91 Tenn., 428.

5. EVIDENCE.  *Of custom of boys to ride on freight trains incompetent.*

In an action against a railroad company for personal injuries sustained by a boy while stealing a ride on a freight train in known violation of the rules of the company forbidding it, it is not competent to show that it was the custom of boys to ride on freight trains between stations, where it is admitted that the company had no knowledge of the custom.  (*Post, p. 12*).

---

FROM  UNION.

---

Appeal  in  error  from  the  Circuit  Court  of Union  County.  W.  R.  HICKS,  J.

Sands *v.* Southern Ry. Co.

TEMPLETON & CARLOCK, J. O. SHARP for Sands.

JOUROLMAN, WELCKER & HUDSON and D. D. ANDERSON for Southern Ry. Co.

McALISTER, J. The plaintiff, an infant, by his next friend, sues the railroad company for damages for personal injuries.

The facts developed by the proof are, that the plaintiff, Albert Sands, a boy about 16 years of age, went to the K. & O. depot, for the purpose of riding to Luttrell, a distance of twenty-two miles, on a freight train. He obtained permission from a negro brakeman to ride on an outgoing freight train upon the payment of twenty-five cents. The negro brakeman told him to "go on the opposite side of the train and get on the car," telling him "that the train would stop at Luttrell for orders, and he could then get off."

The regular fare on a passenger train to Luttrell was seventy-five cents. There is no proof that the conductor consented that the plaintiff might ride, or even knew that he was aboard the train. The plaintiff rode on top of a freight car until the train reached Maloneyville, when he climbed down and went inside the car. At Maloneyville, the negro brakeman went to him and told him that the train would not stop at Luttrell, but would slow up so he could get off.

Plaintiff claims that, probably one hundred yards before reaching the depot at Luttrell, the train seemed to check up and he attempted to alight, but his foot slipped and was caught by one of the wheels, crushing it and necessitating amputation. Plaintiff testifies that at the time he attempted to alight, the train was running at the rate of eight miles an hour, while another witness introduced by him, and who was standing at the depot looking at the train, states that the speed was eighteen or twenty miles an hour.

On the 11th of February, 1899, plaintiff made a statement to one of the agents of the company, giving an account of the accident, which statement was reduced to writing and signed by the plaintiff, and is as follows: "I got on train No. 47, at K. & O. Junction, about 3:30 p. m., January 20, 1899, for the purpose of riding to Luttrell. I got on between the two first cars next to the caboose. The first car was a box, and the next a low side coal car. I gave the front brakeman (a negro) twenty-five cents to let me ride to Luttrell. The brakeman told me they would stop at Luttrell for orders, and I could get off. The train I was on sidetracked at Maloneyville, but I kept out of sight, and don't believe the conductor or flagman saw me. I stuck my head out once and got a glimpse of the conductor, but don't think he saw me. Can't say for certain whether anyone outside of the negro

brakeman saw me get on at K. & O. Junction. There was a boy from Washburn beating his way in a box car, which was the third car from where I was. When we arrived at Luttrell, I climbed over on the ladder of the box car, and got down on the lower step to jump off. Just as I attempted to make my leap from the car, my foot slipped on the step and I lost my balance and fell; the second wheel of the front trucks caught my foot and crushed it. The train was not running very fast. I blame the negro brakeman for this accident. I had been to Knoxville to see my mother.

"(Signed.)                        ALBERT SANDS.

"Witness:   G. H. HALL and R. L. MORRIS."

The plaintiff admitted, on cross-examination, that this statement was substantially correct, excepting that he said nothing about blaming the negro brakeman. Again, on re-direct examination, he was asked if he made the statement embraced in the writing, "that he kept out of sight of the conductor and flagman." He answered: "No, sir, I did not; I don't believe." It is thus seen that he admits the statement is correct excepting in the two particulars mentioned, and as respects the latter, he is not positive.

It was also in proof that the rules and regulations of the Southern Railway Company did not

permit any one to ride on through freight trains without a caboose, and that the engineer, fireman, flagman, or brakeman would have no authority to permit any one to ride anywhere.

At the conclusion of plaintiff's testimony, the defendant interposed a demurrer to the evidence, which was sustained by the Court, and the suit dismissed. Plaintiff appealed, and the first assignment is that the Court erred in allowing the defendant company to demur to the evidence, for the reason that the company itself had introduced original evidence. It is not meant by this assignment of error that the defendant company had formally opened its proof, but the point of the assignment is that the witness, Jake Bewley, introduced by plaintiff, was permitted, on cross-examination, to testify as to the rules and regulations of the company, when he had not been interrogated in respect thereto in his direct examination.

It is well settled that a demurrer to the evidence interposed by the defendant comes too late after the defendant has opened his proof. *Summers* v. *Railroad,* 96 Tenn., 459.

But the question presented now, is, whether testimony elicited on cross-examination, which is not strictly germane to the examination in chief, is original evidence. Exception was made by plaintiff's counsel to the evidence on the ground that

witness was not asked anything about the subject on his examination in chief, and because it is new matter.

It is insisted by counsel for plaintiff that a party has no right to cross-examine a witness except as to facts and circumstances connected with the matters stated in his direct examination, and if he brings out new matter, he makes the witness his own. Counsel cite Greenleaf on Evidence, Vol. 1, Sec. 445 (16th ed.); *State* v. *Tellers,* 7th N. J. S., 229; *Philadelphia & Trenton R. R.* v. *Stimpson,* 14 Pet., 448-661; 6 Peters; McKelvey on Evidence, Sec. 246.

Mr. Greenleaf, in considering the subject, says: "Whether the right of cross-examination—that is, of treating the witness as the witness of the adverse party, and of examining him by leading questions, extends to the whole case, or is to be limited to the matters upon which he has already been examined, in chief, is a point upon which there is some diversity of opinion. In England, when a competent witness is called, and sworn, the other party will, ordinarily, and in strictness, be entitled to cross-examination, though the party calling him does not choose to examine him in chief, unless he was sworn by mistake, or unless an immaterial question having been put to him, his further examination in chief has been stopped by the Judge. It is held by the Supreme Court of the United States that a party has no right

to cross-examine any witness except as to facts and circumstances connected with the matters stated in his direct examination, and that, if he wishes to examine him in regard to other matters, he must do so by making the witness his own, and calling him as such in the subsequent progress of the cause. *Philadelphia R. R.* v. *Stimpson,* 14 Peters; 6 Pet.; 1 Cush., 187-217. This rule is undoubtedly sustained by the weight of American authority. Am. & Eng. Ency. Pl. & P., Vol. 8, pp. 101, 102; *Hobart* v. *Young,* 12 L. R. A., 693, and notes.

In some of the States, as in New York, for instance, the scope of the cross examination is left to the discretion of the trial judge, although the decisions of that State favor the American rule.

"Under this doctrine, if the cross-examination extends beyond the grounds covered in the direct-examination, the witness becomes the witness of the party cross-examining. The testimony brought out binds him as though he had called the witness himself, and in bringing it out, he is confined to the methods of the direct examination." McKelvey on Evidence, Sec. 246.

One of the great difficulties in the practical application of this rule is in determining when a fact sought to be elicited in cross-examination is germane to the examination in chief. "According to the English rule, when a party produces

a witness, who is sworn and examined, the opposite party is not confined on his cross-examination to the matters upon which the witness was examined in chief. He may cross-examine him upon every issue in the case." 8th Am. & Eng. Ency. Pl. & Pr., 112. Berwick, upon *Tweed* v. *Murray,* 19 L. J. Ch., 281. "This rule has also been adopted in a number of American jurisdictions, and the fact that the witness would be incompetent to testify were he called by the cross-examining party, does not affect the rule. The parties who would have the right to make such objection effectually, waives it by calling the witness and examining him upon a single point, and the other party is then at liberty to cross-examine him generally." 8 Am. & Eng. Ency. Pl. & Pr., 102.

The English rule seems to prevail in Alabama, Arizona, Georgia, Massachusetts, Michigan, Missouri, Mississippi, South Carolina, Vermont, and perhaps other jurisdictions. So far as we are advised, this question has never been passed on by this Court, but the practice in this State has been in conformity with the English rule. We believe this rule the sounder in that it presents less technical difficulty, is easier of application, and tends in a larger measure to elicit the truth, the chief end of all judicial investigation. Hence we conclude there was no error in permitting the witness to prove the rules and regulations of the

defendant company on cross-examination. although there had been no inquiry in respect to this matter in the original examination.

We are further of opinion, upon the facts disclosed in the plaintiff's testimony, the company is not liable. The plaintiff was clearly a trespasser upon this train, the company owed him no duty, and in such a case is not liable, except for a wanton or willful injury.

The plaintiff, conscious that he was not entitled to the rights of a passenger, did not go to the conductor, but went to a negro brakeman and paid him twenty-five cents to be allowed to ride to Luttrell. The negro brakeman directed him "to go around the train and get upon the other side," evidently for the purpose of avoiding the conductor. The boy took his position as directed, got upon the train, rode to Luttrell, unobserved by the conductor, and attempted to alight when the train was going at a speed of eighteen or twenty miles an hour, according to the testimony of one of his own witnesses. The proof shows that the plaintiff was sixteen years of age, bright and intelligent, and fully responsible for his own contributory negligence.

It has been held that persons who enter the trains of a railroad company through a fraudulent or collusive arrangement with the brakeman or other subordinate employes, are not passengers. *Brevig* v. *Chicago R. R. Co.*, Minn., 66 N. W.

R., 401; *Janny* v. *Great Northern R. R. Co.,* Minn., 65 N. W. R., 450.

Again, a person who rides upon an engine, in violation of the rules of the company, although he does so upon the invitation of the engineer, is not a passenger. Elliott on Railroads, Vol. 4, p. 2463.

Says Mr. Elliott, viz.: "As we have elsewhere shown, a person cannot, as a general rule, establish the relation of carrier and passenger by entering trains not intended or used for the carriage of passengers. The general rule is that persons cannot rightfully take passage on freight, construction, coal trains, or the like, nor on hand cars, but some of the cases hold that permission by the subordinate agents will constitute the person a passenger; but this ruling we regard as erroneous." Elliott on Railroads, Vol. 4, Sec. 1582, p. 2465.

The general rule has been adopted in Tennessee. In *Railroad* v. *Haley,* 94 Tenn., 383, it appeared that Haley applied for passage on a freight train, and was informed by the conductor that it was against the rules of the company to take passengers on that train without a permit from the Superintendent; but, nevertheless, after so advising him, he took him and others on the train and received fare from them as passengers, and they, being so advised, took passage in the caboose. This Court held that a passenger on a

freight train, with the conductor's permission, but knowing that he is riding in violation of the rules of the road, assumes the risks of accidents. See *Railroad* v. *Meacham,* 91 Tenn., 428.

We cannot doubt, upon the facts in this record, that the plaintiff knew he was violating the rules of the company in embarking upon this freight train, and that his arrangement with the colored brakeman, for the payment of fare, was collusive.

The record shows that the plaintiff offered evidence below tending to show that it was the custom for boys to ride on freight trains between different stations, and to pay brakemen money to ride. Again, plaintiff offered to prove that, prior to the accident, boys under the age of fifteen years had been seen riding up and down the railroad on freight trains. But the Court sustained the exception of defendant's counsel and excluded the evidence. There was no error in this ruling of the Court.

In the first place, plaintiff's counsel admitted, on the hearing, that he could not bring home to the railroad company knowledge of the custom of allowing boys to jump on trains and ride between stations.

Secondly, it was held in *Bayless* v. *Southern Ry. Co.,* decided at Knoxville, September Term, 1900, that proof of such a custom was inadmissible.

Sands *v.* Southern Ry. Co.

This is a case where the plaintiff is clearly not entitled to recover, and the action of the Circuit Judge, sustaining the demurrer to the evidence, is affirmed.