MAYOR AND ALDERMEN OF KNOXVILLE *v.* A. J. KING.

1. MUNICIPAL CORPORATIONS. *Powers.* Under an express power to impose forfeitures, a municipal corporation may, by ordinance, take up and impound the stock of a non-resident of the corporation running at large in its streets, and, upon five days' notice by publication, sell the same to pay the fees of taking up, impounding and keeping.

2. SAME. *Ordinance. Intentional violation.* Where, in such a case, the charter of the corporation provided that its ordinances should not be obligatory on the persons and property of non-residents of the municipality, being citizens of the State, unless in case of intentional violation, the stock of such non-resident may be forfeited when he has knowledge of the ordinance, and knows or has good reason to believe that his stock, when turned loose on his premises, would go into the city, without showing that he had the specific intent that they should go.

FROM KNOX.

Appeal in error from the Circuit Court of Knox county. S. A. RODGERS, J.

L. A. GRATZ for Knoxville.

W. L. LEDGERWOOD for King.

COOPER, J., delivered the opinion of the court.

The charter of the city of Knoxville provides: "That the corporation aforesaid shall have full power and authority to enact and pass such laws and ordinances necessary to preserve the health of the town, to prevent and remove nuisances, * * to impose and appropriate fines, penalties and forfeitures for the

breach of the by-laws and ordinances." It further provides: "That the laws and ordinances of said corporation shall be in nowise obligatory on the persons or property of non-residents of said town, being citizens of the State, unless in case of intentional violation of by-laws or ordinances previously promulgated." By ordinances of the corporation passed on March 19 and May 28, 1876, it was, among other things, declared to be unlawful and a nuisance to permit hogs to run at large within the corporate limits of the city. Provision was also made by the first of these ordinances for impounding hogs thus running at large, and for the sale thereof at public auction, upon five days' public notice, if the hog was not claimed by the owner within the time, the proceeds of sale to be paid into the city treasury. By a subsequent ordinance, passed June 30, 1876, the fees of the poundmaster for taking up and impounding and for keeping and feeding, per day, each hog, are fixed, and it is provided that the treasurer of the city, upon satisfactory evidence of ownership, shall pay to the owner of the hog the proceeds of its sale after deducting the expenses of taking up, impounding and feeding.

This action of replevin was brought by King for a hog taken up and impounded by the corporate authorities under these ordinances. The circuit judge tried the case without a jury, and rendered judgment in favor of King, and the corporation appealed.

The bill of exceptions shows that King himself testified on the trial that he lived one-half or three-quarters of a mile from the corporate limits of Knox-

ville; that he owned hogs, including the one in controversy, which he did not keep in an enclosure but permitted to run at large; that his hogs would sometimes go inside of the city, and he would drive them home; that he tried to keep them from going into the city by turning them back when he saw them taking that direction; that he had heard there was an ordinance against hogs running at large in the city; that he had heard that this ordinance was, and then again that it was not enforced; that his hogs had been taken up once or twice under the ordinance before, and had been released. The other testimony went to show that the plaintiff's hogs had been repeatedly impounded under the ordinances, but, upon his application, had been released by the orders of different officers of the city.

The trial judge found as a fact—a finding well warranted by the evidence—that the plaintiff had knowledge of the existence of the ordinances prohibiting the running at large of hogs within the corporate limits. His Honor, however, gave judgment for the plaintiff below upon the ground that the plaintiff did not intend to violate the ordinances. He conceded that there would have been a willful violation of the ordinances if the plaintiff had lived within such close proximity to the corporate limits as to have known that his hogs, when turned loose on his premises, would go into the city, but thought it would be otherwise if the plaintiff lived at such a distance from the corporate limits that he could not know, or would not have good reason to believe that the hogs would

go into the city.    If the latter clause of this opin-
ion be a sound exposition of the law, it would do
the plaintiff no good in this case; for his own testi-
mony conclusively shows that he not only had good
reason to believe, but knew that his hogs would,
when turned loose on his premises, go into the city.
There is no conflict of testimony on this point, and
the finding of fact should undoubtedly have been against
the plaintiff below.

The case involves the validity of the ordinances in
so far as they undertake to declare a forfeiture of the
animal for running at large contrary to their provis-
ions.    The power to forfeit, it has been held, must
be conferred, or it will not exist: *Donovan* v. *Vicks-
burg*, 29 Miss., 247; 1 Dill. Mun. Cor., sec. 282.
It is unnecessary to consider whether it may not also
be necessarily implied from the grant of authority to
impose fines and penalties, for the power is conferred
by the charter of the city of Knoxville, in the lan-
guage above quoted.    The weight of authority in such
case is, that the power may be exercised by impound-
ing and selling the animal, upon reasonable notice by
publication, for the obvious reason that the owner
may regain his property by paying the reasonable fees
of impounding and keeping, or may have a legal in-
vestigation of the case by bringing his action of re-
plevin, as in any other case of distress: *Whitfield* v.
*Longest*, 6 Ire., 268; *Gooselink* v. *Campbell*, 4 Iowa,
296.    The form of notice may always be prescribed
by the legislative department, whether state or munici-
pal, and personal notice is not essential: *Helen* v.

*Noe,* 3 Ire., 493. The forfeiture of animals under our stray laws is based upon these principles: Code, sec. 1626 *et seq.* And it is well settled that property within the limits of a municipal corporation belonging to a non-resident, may be dealt with as if it belonged to an inhabitant of the corporation: 1 Dill. Mun. Cor., sec. 289. Ordinarily, too, every one whose person or property is legally affected by a municipal ordinance is bound to take notice of it if duly promulgated: 1 Dill. Mun. Cor., sec. 290. But the charter of the municipality in this case expressly provides that the ordinances of the corporation shall not be obligatory on the persons or property of non-residents of the town, who are citizens of the State, "unless in case of intentional violation." The rights of the plaintiff below turn upon the proper construction of this provision.

To be intentional, the violation must, of course, be with knowledge of the ordinance. The circuit judge found as a fact that the plaintiff below did have knowledge of the ordinances in question, a finding sustained by all the evidence. The plaintiff, moreover, as we have seen, resided within so short a distance of the corporation that his hogs, when turned loose on his premises, would and did go into the city, and he not only had good reason to believe, but knew that they would do so. The trial judge was of opinion that these facts would make out a case of intentional violation of the ordinances. He must have so thought either because he would infer from these facts a specific intent on the part of the

plaintiff to violate the ordinances, or because, in his opinion, a specific intent was not required to make out the "intentional violation" within the meaning of the charter.    We concur with him on both points.

A result may be said to be intentional when the party either knows or has good reason to believe that it will follow the act done.    Ordinarily, it is not necessary to show a specific intent, or *mala mens.* Such a requirement would render the enforcement of police regulations, either of the State or its municipalities, altogether uncertain, for each case would, in that view, turn upon its own facts and the peculiarities of the court or jury by whom it was to be determined.    It is absolutely essential to the efficiency of such laws and ordinances that their enforcement should be fixed and certain upon a given state of facts.    All that was intended by the provision in question of the city charter, was that the non-resident citizen should not be subjected to a forfeiture of his property by virtue of an ordinance of which he had no knowledge, and because of an act on his part which he could have no reason to believe would lead to an infraction of the ordinance.    If the municipal laws are allowed to be violated by the live stock of the neighboring residents, the ordinances would cease to be of any utility.    Such residents may well submit to some restrictions upon the common privileges, or supposed privileges of the citizen, for the sake of the resulting benefit to the city, and the increased convenience and safety of its streets to themselves.

It is argued on behalf of the defendant in error,

Mayor and Aldermen of Knoxville *v.* King.

the plaintiff below, that there is no proof of any nuisance having been created by the hog, and that such proof is necessary.     But the obstruction of a public street in a city by any object, animate or inanimate, without necessity, is so clearly in conflict with the purposes of the street, that the municipality, under its general police powers, would have the right by ordinance to declare the mere presence of such object a nuisance.

There is proof in the record that the corporate authorities at times did not enforce the ordinances in question.     It is, of course, not insisted by the plaintiff below that such neglect of the officers repealed or annulled the ordinances.     It is, however, argued that these facts tended to show that the plaintiff did not have that notice of the ordinances which would fix him with intentional violation.     But the trial judge finds, as we have seen, actual knowledge by the plaintiff of the ordinances, and this finding was unquestionably correct.

The judgment below will be reversed, and a judgment rendered here in favor of the city.     The plaintiff's ownership of the hog being conceded, the purposes of the city will, perhaps, be attained by a judgment for the fees of taking up, impounding and keeping the hog, and the costs of the cause.