HOLMES *v*. UNION TELEGRAPH & TELEPHONE CO.

(*Supreme Court, General Term, Third Department.*  November 30, 1891.)

IMPUTED NEGLIGENCE—LICENSOR AND LICENSEE.

> Where a telegraph company permits a messenger service company to string its wires on the poles of the telegraph company, and the two occupy towards each other only the relation of licensor and licensee, the telegraph company is not liable for the negligence of the messenger service company in permitting its wire to fall to the pavement and remain there, to the injury of a passer-by.

Appeal from circuit court, Warren county.

Action by John M. Holmes against the Union Telegraph & Telephone Company.   From a judgment entered on the verdict of a jury, and from an order denying a motion for a new trial, plaintiff appeals.   Affirmed.

Argued before LEARNED, P. J., and MAYHAM, J.

*A. J. Cheritree,* (*E. Countryman,* of counsel,) for appellant.   *King & Ashley,* (*Richard L. Hand,* of counsel,) for respondent.

MAYHAM, J.   The defendant erected its poles and strung its wires along or upon a public street in the village of Glens Falls for the purpose of telephone service, and had so used the poles for more than a year at the time of the alleged injury.   The undisputed evidence also shows that wires used for messenger service were also strung along on these poles, but without the

affirmative consent of the defendant. On the occasion of a rain and snow fall, ice accumulated on the wires attached to these poles in such quantities that some of the wires were broken, and fell down upon the sidewalk, and one of the defendant's employes pushed the broken wire from the sidewalk into the gutter, where it was permitted to remain for some time, and to become frozen into the ice or mud upon the street, forming a loop through which plaintiff tripped, fell, and was injured. On the trial the defendant contended and sought to establish by proof that the fallen wire by reason of which the plaintiff fell and was injured was not the wire of the defendant, but the wire of the messenger service, which the defendant did not erect, and over which the defendant exercised no control; and out of this contention arises the chief point of controversy on this appeal.

The learned trial judge charged the jury in various forms in substance and effect that. if it was not the defendant's wire that caused the injury, then the defendant was not liable; that the defendant was obliged to take care of its own wire, but it was not obliged to take care of its neighbor's. If it owned or had charge of this wire, then it was its wire to take care of. The plaintiff excepted to this part of the court's charge, and upon that exception and alleged 'misdirection of the learned judge the plaintiff seeks to reverse the judgment in this action. We see no error in this direction or charge of the learned judge. The complaint in this action charges the defendant with negligence, and the action was prosecuted upon the theory that the injury was caused by the negligence of the defendant, and not upon the theory that the defendant had permitted the use of its poles by another in such a manner as to become a nuisance. The complaint alleged: "That the defendant so carelessly and negligently took care of, managed, and used said telegraph poles and the wires strung upon the same, did carelessly and negligently permit the wires to become broken or detached from the poles, so as to lay upon and along the highway and street," etc. There was no averment in the complaint for keeping, maintaining, or suffering a nuisance, but mainly for negligence in permitting the wire on its poles to fall upon the street. If this had been the act of the defendant, it would clearly have presented an act of negligence, which, unexplained, would have presented ground of recovery by the plaintiff for the injury, or at least the jury might have so found under the instruction of the learned trial judge in his charge. But the case was not tried upon the theory that the defendant was liable for maintaining a nuisance by permitting some other person to use its poles in such a manner as to create a nuisance, and we do not think that position should be now assumed for the purpose of reversing this judgment. In *Dickinson* v. *Mayor, etc.*, 92 N. Y. 588, the court says: "The allegations in the complaint tend to establish that the defendant neglected to perform a duty in not removing the ice and snow from the walk. This is not an averment for keeping, maintaining, or suffering a nuisance, but merely for neglect in not removing the ice and snow. The complaint was not for a positive wrong committed by the defendant, but for injury caused by reason of defendant's neglect. The authorities establish a distinction between actions for wrong and actions for neglect." And the court, in the case from which the above is quoted, cites numerous cases sustaining that doctrine. The court in this case hold that, when the gist of the action alleged in the complaint is negligence, the plaintiff, in order to recover, must show that the defendant has failed in the use of ordinary diligence in the discharge of some duty incumbent upon it.

Was it incumbent upon the defendant to look after and keep in position the wires of the messenger service, which was a distinct and independent company, and which put up its wires on defendant's poles without the permission of the defendant? We think not. There is nothing in this case which shows that the defendant bore such relation to the messenger company as to make the former liable for the negligence or misconduct of the latter. The

rule seems well settled that to render one person liable for the negligence of another the relation of master and servant or principal and agent must exist. *Stevens* v. *Armstrong*, 6 N. Y. 435; *English* v. *Breman*, 60 N. Y. 609. There seems to be no evidence in this case from which it can be found or reasonably inferred that either of the above relations existed between the defendant and the messenger company. If we are right in that conclusion, then the negligence of the messenger company cannot be imputed to the defendant. They were, so far as the management of their respective wires were concerned, each independent of the other, and one in no way responsible for the acts or negligence of the other as to third persons, unless the implied license by the defendant to the messenger company to attach its wires to the defendant's poles in some way created a liability on the part of the defendant for the negligence of the messenger company. There is no pretense that the defendant's structure of telegraph pole was unsafe, or that any injury resulted to the plaintiff from it. It was the wire either of the telegraph company or of the messenger company that produced the injury. If the wire of the telegraph company, then the judge charged the defendant would be liable; if of the messenger company, then the defendant was not liable. But it is insisted by the appellant that the fact that the defendant permitted the messenger company to attach its wires to defendant's poles made the defendant liable in any event for the injury resulting from negligence of the messenger company in negligently permitting its wires to become detached from the poles, by reason of which the defendant was injured. Thus is presented the question whether a party who owns and possesses a structure lawful and safe in itself, and who permits another, under an implied license, to use for a lawful purpose some portion of the same, is liable, for the negligence of the one using, to third persons, who are injured thereby. The principal authority cited urged by the learned counsel for the appellant in support of appellant's contention on this point is the case of *Timlin* v. *Oil Co.*, (Sup.) 7 N. Y. Supp. 158, affirmed in court of appeals in 126 N. Y. 514, 27 N. E. Rep. 786. We think that case clearly distinguishable from the one at bar. In that case the Acme Oil Company leased of the owner, for the use of the Standard Oil Company, a wall, which was as was found by the jury a dangerous structure at the time of taking the lease. The other defendants were tenants and agents of the Standard Oil Company. The owner of the premises was not made a party. The defendants were all either lessees and occupants of the defective wall or the agents of such lessees. The wall was therefore in the natural occupancy and control of the defendants, and, as the jury found it to be a nuisance, the defendants, who occupied and maintained it, were liable to the person who was injured by its fall. In that case the wall which fell was in the possession of the defendants, and under their control. In the case at bar the wire of the messenger company was in its possession and under it control, and not under the control of the defendant. If the defendant's poles had fallen and produced the injury, and the action had been brought against it for the injury, the cases would have been parallel. Then it would have been the duty of the defendant, in the use and possession of the wire, to have exercised care in preventing its wire from falling and injuring the defendant. The defendant owed a duty to the plaintiff and the public in relation to its own wire and wires in its possession and under its control, but it owed no duty to the plaintiff in relation to the wire of the messenger company, unless the messenger company was the servant, employe, or agent of the defendant. No such relation existed between the defendant and the messenger company. In the *Timlin Case*, 7 N. Y. Supp., *supra*, LANDON, J., says: "The defendants are liable if they owed a duty to the plaintiff's intestate respecting this wall which they failed to perform, and because of such failure the wall fell and killed him." The duty in that case arose out of the defendants' possession of the wall, and their control over it. No

such duty can be charged upon the defendant here arising out of the messenger company's wires, which were not in the defendant's possession, and over which defendant exercised no control. The charge to the jury was therefore correct, and the judgment should be affirmed, with costs.