Elizabeth S. Fox, as Administratrix of Ernest Fox, Deceased, Respondent, *v.* The Village of Manchester et al., Appellants, Impleaded with Others.

1. Municipal Corporations — Liability for Injuries Caused by Live Electric Light Wire. A municipality is not responsible for injuries to travelers arising from fallen or hanging telephone or electric light wires obstructing the street and likely to strike or come in contact with them, unless it has notice of such obstruction or the condition is apparent and the danger obvious.

2. Negligence — Evidence — Improper Use of Testimony Taken at Coroner's Inquest. In an action brought against an incorporated village, an electric light company and the owner of a telephone line, to recover for the death of plaintiff's intestate resulting from his coming in contact with the end of a telephone wire, hanging down between the sidewalk and roadway, which lay across the light wire at a point where the insulation was worn away so that a powerful electric current passed from the light wire through the telephone wire thereby causing the death of plaintiff's intestate, it is erroneous to permit the plaintiff, against objection and for the purpose of establishing notice to the trustees of the village of the dangerous condition of the wire, to read in evidence the testimony of the trustees taken at the inquest held by the coroner on the body of the deceased; while such testimony might have been competent for the purpose of contradicting the testimony of the trustees at the trial, this does not authorize its use as affirmative evidence to show that the trustees had notice of the dangerous condition of the pendent wire.

3. Same — Incompetency of Occurrences Remote in Time and Distance. It is also erroneous to permit the plaintiff, against objection and for the purpose of charging the defendants with knowledge of the dangerous condition of the wires, to prove that, several months previous to the accident, at a point nearly a quarter of a mile distant from the place of the accident and far beyond the point where the electric wire terminated, a piece of telephone wire hung down from a pole nearly to the ground and that several persons had received shocks, none of them

serious, therefrom, and that the trustees thereupon caused the wire to be cut off; since the occurrence was too remote in time and distance to be competent evidence against the village or either of the other defendants. *Fox* v. *Village of Manchester*, 100 App. Div. 512, reversed.

(Argued October 25, 1905; decided November 21, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 3, 1905, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George Raines* and *E. A. Griffith* for village of Manchester, appellant. It was error not to have granted the defendants' motion for a nonsuit at the close of the plaintiff's case or directed a verdict in favor of the defendants after all the testimony was in, on the ground that the plaintiff had failed to prove facts sufficient to constitute a cause of action and that plaintiff's intestate was free from blame. (*Piper* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 230; *Brugher* v. *Buchtenkirch*, 167 N. Y. 157; *Hilsenbeck* v. *Guhring*, 131 N. Y. 675; *Kelly* v. *Otterstedt*, 80 App. Div. 399; *Weston* v. *City of Troy*, 139 N. Y. 281.) The duty of affirmative vigilance rested upon Fox; he was taking chances in going through the gutter. (*Strutt* v. *B. & R. R. Co.*, 18 App. Div. 134; *Downey* v. *Low*, 22 App. Div. 463; *Reilly* v. *Otterstedt*, 80 App. Div. 401; *Laflin* v. *B., etc., R. R. Co.*, 106 N. Y. 136; *Coxhead* v. *Johnson*, 20 App. Div. 610; *Weston* v. *City of Troy*, 139 N. Y. 282; *Wieland* v. *D. & H. C. Co.*, 167 N. Y. 27; *Wiwirowski* v. *R. R. Co.*, 124 N. Y. 420; *Cordell* v. *R. R. Co.*, 75 N. Y. 330.) The admission of the evidence of the boys getting shocks from the wire in front of Hawks' bakery before the accident, over defendants' objection, was error which requires the reversal of the judgment and order denying motion for a new trial. (*Gustafson* v. *Young*, 91 App. Div. 433; *Perras* v. *U. T.*

Co., 88 App. Div. 260; *Morrow* v. *W. E. R. Co.*, 54 App. Div. 592; *Brady* v. *M. R. Co.*, 127 N. Y. 51; *Yates* v. *People*, 32 N. Y. 518; *Dye* v. *D., L. & W. R. R. Co.*, 130 N. Y. 671; *Gillrie* v. *City of Lockport*, 122 N. Y. 406.) The receiving in evidence of statements of Trustees Smith and Rodney after the accident, of conditions existing previous thereto, were inadmissible to bind the village for any purpose and constitute reversible error. (*Clapper* v. *Town of Waterford*, 131 N. Y. 390; *Cortland Co.* v. *Herkimer Co.*, 44 N. Y. 422; *Nat. Bank* v. *Burns*, 84 App. Div. 100; *White* v. *Lewiston*, 94 App. Div. 8; *Waters* v. *U. S.*, 4 Ct. of Claims, 389.) This defendant's motion for a nonsuit or for the direction of a verdict should have been granted on the ground that the plaintiff had not made out a case against it. (*City of Denver* v. *Sherrett*, 88 Fed. Rep. 226.)

*Frank Rice* for Ontario Light and Traction Company, appellant. The evidence in the case does not show negligence on the part of the Ontario Light and Traction Company. (*Twist* v. *Rochester*, 37 App. Div. 307; 165 N. Y. 619; *Freeman* v. *B. H. R. R. Co.*, 54 App. Div. 596; *Wilson* v. *A. B. Co.*, 74 App. Div. 596; *City of Albany* v. *W. T. & R. Co.*, 76 Hun. 136; *C. E. L. Co.* v. *Koepp*, 64 Kan. 735; 68 Pac. Rep. 608; *Holmes* v. *U. T. & T. Co.*, 41 N. Y. S. R. 767; 139 N. Y. 651; *Quill* v. *E. St. T. & T. Co.*, 159 N. Y. 1.)

*F. A. Kuntzsch* for respondent. The question of contributory negligence of the plaintiff's intestate was for the jury. (*Woodworth* v. *N. Y. C. & H. R. R. R. R. Co.*, 55 App. Div. 23; 170 N. Y. 589; *Chisholm* v. *State*, 141 N. Y. 246; *Greany* v. *L. I. R. R. Co.*, 101 N. Y. 419; *Irish* v. *U. B. & P. Co.*, 103 App. Div. 45; *Brusso* v. *City of Buffalo*, 90 N. Y. 679; *Moebus* v. *Herman*, 108 N. Y. 349; *Pettingill* v. *City of Yonkers*, 116 N. Y. 558; *Downey* v. *Low*, 22 App. Div. 460.) The proof is sufficient to charge all the defendants with negligence, and that question was properly one for the jury. (1 Thomp. on Neg. [2d ed.] 746, 749, § 813; *Paine*

v. *E. I. & P. Co.*, 64 App. Div. 477; *Wittleder* v. *C. E. I. Co.*, 47 App. Div. 410; *Twist* v. *City of Rochester*, 37 App. Div. 307; 165 N. Y. 619; *Fisher* v. *Village of Mount Vernon*, 41 App. Div. 293; *Leary* v. *City of Yonkers*, 95 App. Div. 126; *Murphy* v. *Village of Seneca Falls*, 57 App. Div. 438.) The exceptions to the admission of evidence showing that persons were shocked from the Peck wires at Hawks' bakery some time before the accident were not well taken. (*Hinds* v. *Burton*, 25 N. Y. 544; 2 Thomp. on Neg. [2d ed.] 911, § 2370; *Hanrahan* v. *M. R. R. Co.*, 53 Hun, 420; 130 N. Y. 658; *Evans* v. *K. G. Co.*, 148 N. Y. 112; *Mount* v. *B. U. G. Co.*, 72 App. Div. 140.) The village having had knowledge of the conditions was bound to make inspection to see if the danger was removed. (*Twist* v. *City of Rochester*, 37 App. Div. 316; *Bieling* v. *City of Brooklyn*, 120 N. Y. 98; *Hume* v. *Mayor, etc.*, 74 N. Y. 264.) The reception in evidence of the admissions by the trustees to the coroner was not reversible error, and the facts admitted were proven by other competent evidence. (*Shaw* v. *Town of Potsdam*, 11 App. Div. 508; *Van de Water* v. *Town of Wappinger*, 69 App. Div. 325; *McGean* v. *M. Ry. Co.*, 117 N. Y. 219; *Johnson* v. *Cochrane*, 91 Hun, 165; 159 N. Y. 505; *People* v. *Fernandez*, 35 N. Y. 49.)

Cullen, Ch. J. The action was brought to recover damages for the alleged negligence of the defendants by which was caused the death of the plaintiff's intestate under the following circumstances: The principal street of Manchester, a village with about seven hundred inhabitants, runs north and south. The line of wires of the light and traction company entered the village at the intersection of the right of way of the Lehigh Valley railroad and was carried north along the street in front of a cemetery as far as a church, for which it furnished light. There had been also along the main street telephone wires which were strung on the poles of the traction company as far as the church and from that point north to the center of the village on another set of

poles. The telephone wire had not been in use for some time. On the occasion of the accident, which occurred about half-past eight in the evening, the deceased, crossing the street, seized hold of or came in contact with a piece of wire that hung down from a tree to the ditch between the sidewalk and carriageway, and received an electric shock by which he was immediately killed. The point at which the accident occurred was in front of the cemetery and between the church and the railroad crossing where the light and traction company maintained its line. An examination the next morning showed that the telephone wire lay across the light wires and that the insulation on the wires had worn away and that the hanging wire was a part of the telephone line. How long this piece of wire had been hanging down was a matter of controversy on the trial. That the current which caused the death of the deceased came from the light wire through the telephone wire was conceded. The plaintiff charged that the light company was negligent in permitting its wires to remain in a dangerous and unprotected condition and that the village was negligent in allowing that condition to remain by which the safety of travelers on the highway was imperilled. A verdict was recovered against both the defendants and the judgment entered thereon has been affirmed by the Appellate Division by a divided court.

The contributory negligence of the deceased was a question of fact for the jury. It was not negligence as a matter of law to cross the street at a point other than the crosswalk. Nor was deceased necessarily negligent in having seized hold of the wire. It may have come in contact with his person or he may have seized it to remove it from his way. The negligence of the village was also a question for the jury to be determined with reference to the length of time they might find the wire had been hanging down, whether the village authorities knew or should have known of its condition, and also to the place at which it was hanging, whether it was likely at that point to be dangerous. There were, however, errors committed on the trial which require a reversal of the judgment.

10

To establish notice to the trustees of the dangerous condition of the electric wire the plaintiff, over the objection and exception of the village, was allowed to read in evidence the testimony of the trustees taken at the inquest held by the coroner on the body of the deceased. That the declaration of an agent or that of an officer of a corporation is not evidence against his principal, except when made in the course of his agency or in the discharge of his official duties, is settled law. (*First Nat. Bank* v. *Ocean Nat. Bank*, 60 N. Y. 278.) It is contended, however, that a different rule applies to declarations the only object of which is to show knowledge of or notice to the person making them, and in support of that claim two decisions of the Appellate Division are cited. (*Shaw* v. *Town of Potsdam*, 11 App. Div. 508; *Vandewater* v. *Town of Wappinger*, 69 App. Div. 325.) It may be that declarations of a village official as to the condition of a highway, made not only before the occurrence on which it is sought to charge the village with liability, but sufficiently long before to have made it the duty of the village, with the knowledge which the declaration imports, to repair the highway, are competent evidence. In such a case a declaration would not be competent as an admission, but as evidence of the state of the knowledge of the person making the declaration. Such was the case in *Shaw* v. *Town of Potsdam* (*supra*). The knowledge of the officer or agent after the transaction is of no materiality whatever and his declaration then made of his previous knowledge is as purely hearsay as a declaration of any previous act. The doctrine of *Vandewater* v. *Town of Wappinger* (*supra*) is manifestly erroneous and cannot be upheld. The respondent contends that this error was rendered harmless by the subsequent testimony of the trustees. It is asserted that the trustees on the trial of this action testified substantially to everything that they had testified to before the coroner. This claim is not wholly justified. Smith, one of the trustees, testified positively that he did not see the wire which killed the deceased hanging down from the tree and that he had made

no statement before the coroner to that effect. It is true that the testimony given before the coroner would have been competent for the purpose of contradicting Smith's testimony on the trial, but this would not authorize its use as affirmative evidence to show that the trustees of the village had notice of the dangerous condition of the pendent wire.

For the purpose of charging the defendants with the knowledge of the dangerous condition of the wires the plaintiff was allowed to prove, over the objection and exception of the appellants, that eight or ten months previous to the accident to the deceased a piece of telephone wire in front of a bakery, at a point nearly a quarter of a mile from the scene of the accident and far to the north of the church where the light wires terminated, hung down from a pole nearly to the ground and that several children and one grown man·had received shocks therefrom. It appeared that promptly on this occurrence the trustees caused the wire to be cut off at the top of the pole and that thereafter there was no trouble. We think this occurrence was too remote in time and in distance to be competent evidence and that its admission was erroneous. It is contended that the fact that persons had received shocks from the telephone wire at this point should have apprised the trustees that the telephone wire and the light wires must at some point to the south have been in contact and, therefore, dangerous, and that the trustees should thereupon have inspected the two lines and either had the telephone line removed or the position of the wires changed. This view was substantially accepted by the trial court, which charged, over the exception of the defendant village, that the law imposed on the officials of the municipality the duty of making an inspection from time to time to see whether the wires, if dangerous, had been remedied or removed. We are of a different opinion. Nobody had received substantial injury by the hanging wire at the bakery. The children had played with it and thus received the shocks. It is true one man is said to have been knocked down, but it appears that he was intoxicated at the time. The trustees discharged their

duty when they cut off and removed the pendent wire. There
was nothing so alarming in the fact that children playing with
the wire had received shocks from it, in no case with serious
results, that rendered it necessary or the duty of the trustees
to inspect the whole length of the wires to examine their
insulation and see that at all points they were in proper condi-
tion.   Though the law authorizes the construction of electric
light lines, power lines, telephone lines and similar struc-
tures along the streets and highways, that does not relieve
the municipality from its duty to see that the streets and
highways are kept reasonably safe and secure for the pub-
lic using them.   But this doctrine is not to be carried to
the extent of holding that the obligation of the municipality
is co-extensive with that of the company which maintains the
line.   Principally the duty of a municipality is to see that
its streets and highways are kept safe and secure for passage
over the surface, for the primary object of highways is to
enable the public to travel thereon.   Therefore, it must
always be alert to prevent or guard obstructions in the high-
ways.   Where, however, the danger to the traveler is not in
the nature of an obstruction, but proceeds from the negligence
of a third party in the use of the highway in a manner author-
ized by law, the municipality should not be held liable for that
negligence unless it has notice thereof, or the condition is
apparent and the danger obvious.   The municipality may well
be held to the same degree of responsibility with regard to
electric light poles, telegraph poles and the like that is imposed
upon it with reference to awnings, gratings and similar incum-
brances on the street, and so also as to fallen or hanging wires
obstructing the street and likely to strike or come in contact
with the traveler.   To go further, however, and impose upon
a municipality the duty of inspecting the insulation of the
wires, the position in which they are strung and similar matters
involving technical knowledge, unless in the case of an
obvious danger or exceptional occurrence, would place upon it
a very onerous and unfair burden.   The company maintaining
the line of wire is primarily liable for its negligent or defec-

tive condition in these respects and should be solely so unless in the cases suggested of obvious danger or exceptional circumstance. It follows that not only was the evidence of the shocks received from the fallen wire at the bakery improperly received, but the learned trial court erred in charging the jury that by reason of that occurrence it was the duty of the municipality to inspect the lines to see that the telephone wire had been removed or that the wires were no longer in contact. The case of *Twist* v. *City of Rochester* (37 App. Div. 307; affd., 165 N. Y. 619) is not in point. There it was a line of wire maintained and used by the defendant that caused the injury for which a recovery was had. The defendant's liability was predicated, not on the failure of its duty as a municipality to keep its streets safe, but on its negligence as the owner and operator of a telephone line, in which character its responsibility was just the same as that of a telegraph, telephone or electric light corporation.

The appellant, the Ontario Light and Traction Company, contends that it was in no way responsible for the condition of the telephone wire and that, therefore, the motion to dismiss the complaint as to that defendant should have been granted. In support of this claim reliance is placed on two cases, *Holmes* v. *Union Telegraph & Telephone Company* (16 N. Y. Supp. 563; affd. on opinion below, 139 N. Y. 651) and *Quill* v. *Empire State T. & T. Company* (159 N. Y. 1). Each of these cases presented the question of the liability of the corporation owning the line of poles for injuries resulting from the wires or appliances of another corporation strung on the poles by consent of the owner. In the first case the wire had fallen into the street causing injury to a traveler who tripped on the fallen wire. In the second case a traveler on the street was injured by the fall of a glass insulator. In each case the corporation owning the line of poles was held not liable on the ground that it was the negligence of the corporation operating and maintaining the line of wire which caused the injury. The present case differs essentially from those cited. There the injury was caused solely

by the act or omission of a third party to which the defendant in no way contributed except by the license given the third party to use the poles. Here it was the current of electricity developed by the traction company and conducted over its wires that caused the death of the deceased. Electric light wires, of all wires in common use, carry the most powerful currents. The intensity of the current conducted through that defendant's wire, as shown by the evidence in this case, was about two thousand volts, the shock from which would be fatal to human beings. It was, therefore, the duty of that defendant to insulate its wires and guard against the electric current becoming a source of danger and injury to travelers on the highway or third persons, so far as reasonable care could accomplish that result. It was the owner and in possession of the poles and it was not justified in granting permission to third parties to string wires so near light wires as to become dangerous to the public (*Jones* v. *Union Ry. Co.*, 18 App. Div. 267), much less to allow those wires to come in contact with its own and destroy the insulation which should have prevented the escape of the current. It also owed the duty of reasonably inspecting its lines to see that its insulation was preserved intact and that the line had not become dangerous by contact with other wires. There is evidence in the record tending to show that the original construction was faulty on account of the proximity of the two lines of wire and also that inspection would have shown their dangerous state and the defect in the insulation. The motion for a nonsuit by this appellant was, therefore, properly denied, but on account of the error already pointed out, in the admission of evidence as to the occurrences at the bakery the year previous to the accident, the judgment against it must also be reversed.

The judgment should be reversed as to both appellants and new trial granted, costs to abide the event.

Gray, Bartlett, Haight, Vann and Werner, JJ., concur; O'Brien, J., absent.

Judgment reversed, etc.