SAM HAWKINS, JR., *v.* HUBBELL & HOUSER *et al.*

(*Nashville.*    December Term, 1912.)

1. **INJUNCTION.** Action for wrongful suing out, must show malice and want of probable cause.

   **In** an action for the wrongful suing out of an injunction, not brought on the bond, but against the individual, the complainant must show malice and want of probable cause, as in actions for malicious prosecution. (*Post, p.* 315.)

   Case cited and approved: Land & Mining Co. v. Tarwater, 126 Tenn., 601.

2. **APPEALS.** No review if no assignment of error.

   A subject on which no assignment of error has been made need not be considered on appeal. (*Post, p.* 315.)

3. **CHANCERY PRACTICE.** Master's report must be responsive to the order of reference.

   Where a reference is made to the master requiring a report, among other things, whether complainant contracted for hands who declined to work for him because of the injunction, and as to the amount of damages suffered by complainant as resulting therefrom, his report that no contract was shown was so far responsive, but his further report that hands declined to work for complainant, and that he was thereby damaged a certain sum, was not responsive, and was therefore impertinent, and could not be lawfully noticed or received, or made the basis of a decree, and an exception thereto should have been sustained by the chancellor. (*Post, pp.* 316, 317.)

4. **APPEAL AND WRIT OF ERROR.** On appeal on exceptions, nothing else is before the court.

   **On** appeal or writ of error from the action of the chancellor on exceptions, nothing else is before the supreme court. (*Post, pp.* 317, 318.)

   **Case** cited and approved: Allen v. Shanks, 90 Tenn., 359.

Hawkins v. Hubbell.

**5. SAME. Supreme court will not disregard a valid exception to master's report simply because the chancellor did so.**

Where the chancellor erroneously disregarded a valid exception to the master's report, and rendered a decree thereon notwith-standing the exception, the supreme court cannot do so, simply because the chancellor did so. (*Post, pp.* 318, 319.)

**6. SAME. Objection that matter was not distinctly alleged in the bill cannot be made in the supreme court, if not made below when.**

Where a matter, not distinctly alleged in the bill, was treated by the chancellor and the parties without objection as if it were, as where an order of reference is made on such matter, sub mitted to by both parties, without objection made on the record, it must be treated as a construction of the bill on his point ac quiesced in by both parties and acted under, and it is too late to make any objection on that aspect of the case in the supreme court. (*Post, pp.* 319, 320, 321.)

**7. INJUNCTION. Speculative damages from failure to secure hands to run a farm resulting from injunction against its sale are not recoverable.**

Damages resulting from trouble, annoyance, and expense from failure to secure hands to run a farm are purely speculative, and incapable of accurate estimation, or tracing to an injunction against a sale of the farm, and inferentially the standing tim-ber. (*Post, pp.* 319, 320.)

**8. SAME. Same. That was not legally the proximate cause of injuries.**

Nor can it be said, in a true legal sense, that the suing out of such injunction was the proximate cause of such alleged in-juries. (*Post, p.* 320.)

**9. TORTS. Wrongdoer is liable for all damages resulting directly from wrongful acts and that might have been reasonably antici-pated.**

The general rule in actions for torts is that the wrongdoer is liable for all injuries resulting directly from the wrongful acts, whether they could or could not have been foreseen by him.

provided the particular damages in respect to which he proceeds are the legal and natural consequences of the wrongful act imputed to the defendant, and are such as, accordingly to common experience and the usual course of events, might have been reasonably anticipated. (*Post, p.* 320.)

10. **INJUNCTION. No recovery of damages upon complainant's own testimony of failure to obtain hands on account of injunction, when no names were given.**

A complainant claiming that he was prevented by a wrongful injunction from obtaining the kind of laborers he wanted and needed for certain work cannot recover damages upon his own testimony, consisting of broad general statements as to his failure to obtain such laborers, without giving any names, so that his testimony could be sustained or refuted, as the case might be; for a man coming into court with such an extraordinary claim should be far more definite in showing the court how and why he suffered injury. (*Post, p.* 321.)

11. **SAME. Expenses in obtaining a loan necessitated by wrongful injunction against sale of land are not recoverable.**

The expenses in obtaining a loan of money, which complainant claimed he had to obtain to pay a judgment, were not a proper element of damages in a suit for a wrongful injunction against the sale of his land. (*Post, pp.* 321-323.)

12. **SAME. Same. Usury paid for loan of money necessitated by injunction is not recoverable as damages.**

Usury paid for a loan of money cannot be recovered as damages in an action for a wrongful injunction, wherein a part of the recovery sought was for expenses in obtaining such loan rendered necessary by the injunction. (*Post, p.* 323.)

13. **SAME. If no actual damages were suffered from wrongful injunction, only nominal damages and costs are recoverable, but not costs of appeal.**

Where no actual damages are shown to have been suffered by reason of a wrongful injunction, complainant can recover nothing but nominal damages and costs, but may be taxed with costs of appeal. (*Post, p.* 323.)

Hawkins v. Hubbell.

FROM FRANKLIN.

Appeal from the Chancery Court of Franklin County. —T. M. McCONNELL, Chancellor.

FELIX D. LYNCH, for complainant.

T. J. ALEXANDER, for defendants.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This action was brought to recover damages for wrongfully suing out an injunction—not on the bond, but against the complainants, personally, in the injunction suit. The chancellor rendered a decree for $1,100, from which a writ of error was prosecuted to this court.

In such an action as the present, where suit is not brought on the bond, it is necessary for the complainant to show malice and want of probable cause, as in actions for malicious prosecution. *Pyott Land & Mining Co.* v. *Tarwater*, 126 Tenn., 601, 150 S. W., 539. Defendant herein has made no assignment on this subject, and we need not consider it. We shall only say that the evidence is that the injunction bill, which had been brought by Hubbell & Houser against Hakwins, was dismissed in this court on the ground that under the facts stated in that bill the appropriate relief was attachment, not injunction.

Assuming, then, without deciding, that a suit for malicious prosecution might be based on such facts, we proceed to consider the questions made in the case.

The bill charged several grounds of damages, as that, as a consequence of the injunction restraining Mr. Hawkins from selling the land, he lost a valuable sale of it, and that pending the injunction the land had decreased in market value; that, as the standing timber was a part of the land, the injunction necessarily included a command not to sell this, and that, pending the injunction, much valuable cedar timber decreased in market value; that he could not, by reason of the pendency of the injunction, procure hands to work his farm, and that he suffered injury by reason of that fact; that he had to borrow money to pay off a judgment, which the present defendants had recovered against him, and by reason of the existence of the injunction he had to pay a "bonus" of $100, which he otherwise would not have had to pay, in order to get the money.

The chancellor referred these matters to the master for a report, which was made, wherein that officer found $1,000 damages as arising in respect of the inability to employ hands, and $100 in respect of the so-called "bonus." As he reported adversely on the other matters, and they are not now before us, we shall confine the decision to the two points just referred to, but will incidentally discuss some points logically connected therewith.

The order of reference as to the matter of the hands was:

"Report whether or not, prior to the suing out of said injunction, complainant had made any contract, or had any real understanding, with any valuable hands to work on his farm in the crop season, and cut timber for the market in winter; if so, the master will further report whether or not such valuable hands declined to work for complainant because of the fact that the injunction sued out forbade the cutting of complainant's timber, and thereby deprived said hands of the contemplated winter's work in cutting timber. If so, the master will further report who said valuable hands were, and the substance of complainant's contract with them in relation to cutting said timber. If any such contract existed as hereinbefore inquired about, and said hands failed to carry it out because of the suing out of said injunction, the master will further report what, if any, damages complainant suffered on account thereof."

The master reported: "The record does not disclose whether, prior to the suing out of said injunction, complainant had made any contract, or had any real understanding, with any valuable hands; but it does disclose the fact that hands declined to work for complainant because of the suing out of said injunction, and not being able to get hands the year around, and not being able to cut the cedar timber and deliver same, complainant was damaged $1,000.

The order of reference asks the master if there were any special contracts with hands which were destroyed

by the injunction, and, if so, the damages resulting. The master replies that the evidence shows no such contract. This was a complete answer, from which necessarily followed the conclusion that there were no damages under that head. The master, however, went further, and reported upon a matter not submitted to him, to the effect that although there were no such special contracts, yet as a consequence of the injunction, hands did decline to work for complainant, "and not being able to get hands the year around, and not being able to cut the cedar timber and deliver the same, complainant was damaged $1,000." This part of the report was not responsive to the order of reference, was therefore impertinent, and could not be lawfully noticed, or received by the chancellor, or made the basis of a decree. Gibson's Suits in Chy. (2d Ed.), sec. 611, par. 2. Defendant excepted to the report on this ground in the court below, and the exception should have been sustained; but the chancellor overruled it. Thereupon the defendant brought the case to this court on writ of error and assigned this action of the chancellor for error. On the grounds stated we must and do sustain this assignment. This closes this head of the controversy, since on an appeal or writ of error from the action of the chancellor on exceptions only, nothing else is before us. *Allen & Hill* v. *Shanks*, 90 Tenn., 359, 377, 16 S. W., 715.

Complainant's counsel attempts two answers to the foregoing obstacle in his way to a recovery. The first is that there is in fact no variance between the order of reference and the report; but the variance is so ob-

vious that no argument could make plainer what a
comparison of the two shows. The second is that the
point is immaterial, because the chancellor disregarded
the exception, and rendered a decree notwithstanding.
But from what we have said it is perceived that he had
no legal right to disregard the exception, and we can-
not do so, simply because he did.

If the chancellor had set aside the report, and pro-
ceeded to render a decree on the issues made by the bill
and answer, and the evidence relevant thereto a differ-
ent question would have been presented. But he did
not do this. He based his decree distinctly on the re-
port and the exceptions. The case was so treated by
the chancellor and the parties, without objection from
any one, in the chancery court, and it must be so treated
here. We have taken note of the fact that the complain-
ant did not distinctly allege in the bill that he had con-
tracts already made with hands which were broken by
them on account of the injunction; but the order of ref-
erence, submitted to without objection made on the rec-
ord, both by the complainant and the defendants, must
be treated as a construction of the bill on this point, ac-
quiesced in by both parties and acted under, and it is
now too late to make any objection on that aspect of the
case in this court.

If this objection could be overcome, and we could get
back to a literal construction of the bill, that which com-
plainant gave the bill, in effect, in his deposition, we
should have a case where a party was claiming damages
because, owing to an injunction which left him in full

possession and use of his land, but which restrained
him from selling it, and inferentially the standing tim-
ber, he was put to a great deal of "trouble, annoyance,
and expense to secure hands to run his farm." Such
damages, of course, would be purely speculative, and
incapable of anything like accurate estimation, or trac-
ing to the wrongful act complained of. Nor could it
be said, in a true legal sense, that the suing out of an
injunction was the proximate cause of such alleged in-
juries. The liability for damages in cases of tort, in
respect of the governing principle, is that formulated in
13 Cyc., 28: "The general rule in actions for tort is
that the wrongdoer is liable for all injuries resulting
directly from the wrongful acts, whether they could or
could not have been foreseen by him, provided the par-
ticular damages in respect to which he proceeds are the
legal and natural consequences of the wrongful act im-
puted to the defendant, and are such as according to
common experience and the usual course of events might
reasonably have been anticipated." It could hardly be
said that the difficulty of obtaining hands to work on
a farm would, in the usual course of events, result from,
or naturally be supposable as resulting from, an order
of court making it certain that the owner would keep
the farm, and not sell it, and thus be able to give em-
ployment to them in making a crop; nor would this re-
sult be altered by the fact that some hands might refuse
to accept employment because the order referred to in
effect forbade the sale of timber, and thus cut off some

a class of farm hands would be quite exceptional, as farm hands are usually hired to make a crop.

We have read the record carefully, and, considering the case apart from the master's report, which for the present we shall do, to express our view of the merits, we are of the opinion that complainant has suffered no injury. His farm is more valuable than it was during the continuance of the injunction; also his cedar timber. As to his failure to obtain the kind of hands he wanted, he offers no testimony but his own, and conspicuously fails to give any names, so that his testimony could be sustained or refuted, as the case might be. A man coming into court with such an extraordinary claim should be far more definite in showing to the court how and why he suffered injury. He should do more than make broad general statements. Besides, it is in evidence that complainant was contentious, and overbearing with his employees, and that on this account it was hard for him to get hands.

The fourth instruction to the master, contained in the order of reference, was:

"He will report what amount of expenses, if any, in addition to legal interest, complainant had to pay to secure the loan mentioned in his bill, with which to pay off the recovery of defendants Hubbell & Houser, secured against him in the case of *Hubbell & Houser* v. *Sam Hawkins, Jr.*"

To this the master responded:

"That complainant, Hawkins, had to pay a bonus or

127 Tenn.—21.

additional expense of $100 in order to borrow money
with which to meet or pay off the recovery against him
to defendants, in addition to the legal interest in secur-
ing said loan."

Complainant's evidence on this subject, which is also
in line with the allegations of his bill, is as follows: That
on account of being restrained by the injunction from
selling his *land and timber* he was compelled to borrow
money to pay off the judgment which Hubbell & Houser
recovered against him; that in order to secure the loan
he had to pay a "bonus or commission," in addition to
six per cent. for the time; that this was something over
$100; and that he would have been able to pay the judg-
ment referred to without effecting the loan, if he had
been permitted to go on and market his cedar timber.
At another place in his deposition he says: "Stopping
the sale of the timber caused me to borrow money at a
great loss, by paying interest. And the talk that was
circulated that my farm would soon be sold, I could
borrow no money without paying such interest that I
could not stand, and have to pay it in advance. I could
sell neither timber nor land to meet these judgments, so
I had to make a loan, or get money on my farm, which
cost me a great deal, to meet the judgment."

We do not think this was a proper element of dam-
ages. Let us assume that the $100 was a legal charge
against the complainant. He owed the debt, and had to
obtain money to pay it. This he had to obtain either
by sale of his property (land and timber) or by making
a loan. He had an offer of $5,000 for his land, but when

the injunction was dissolved it was worth $10,000. His timber likewise was of much greater value than it was when he was trying to sell it, just before the suing out of the injunction. Clearly he would have lost much more than the $100 if he had sold when he wished to.

But the $100 was something in excess of the legal rate for the use of money, and hence was usury. This could not be claimed as damages.

On each of the grounds stated, complainant must be denied relief as to the $100 item.

It results that the complainant can recover nothing but nominal damages.

The decree of the chancellor will therefore be reversed, and a decree will be entered here for only nominal damages, one cent, and the costs of the court below. The costs of this court will be paid by the complainant