CITY OF KNOXVILLE *et al. v.* HARGIS.

(*Knoxville,* September Term, 1946.)

Opinion filed November 30, 1946.

Rehearing denied January 11, 1947.

264

WAYNE PARKEY and JAMES P. BROWN, both of Knoxville, for plaintiff in error City of Knoxville.

BEN R. WINICK and MAX MORRISON, both of Knoxville, for plaintiff in error Myrtle Brichetto.

DONALDSON, MONTGOMERY & KENNERLY, of Knoxville for defendant in error.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This suit was filed in the Circuit Court of Knox County, by the administratrix, seeking damages for the wrongful death of her husband, who, while running down a Knoxville sidewalk, struck an awning and died as a result. The tenant of the building to which the awning was attached, the owner of the building, Myrtle Brichetto, her husband, and the City of Knoxville, were made defendants to the suit. The tenant and the husband of the owner have been dismissed, so that there remain as parties, the plaintiff administratrix, and the defendants, the owner of the building and the City of Knoxville.

The only question is one of legal liability and there is little dispute about the facts. The plaintiff's husband, Bill Hargis, while trotting down the sidewalk arm-in-arm with a friend, struck his head on the horizontal cross-arm of an awning attached to a building owned by Mrs. Myrtle Brichetto. As a result of the collision with the awning, he was thrown to the sidewalk,—received further injuries and died.

The awning is the usual type, made of canvas stretched on metal pipe. Photographs in the record show that the top of the awning, across its full length, was attached to the building. A vertical half-inch pipe or slide-rod was also attached to the building and provided a run-way upon which the horizontal arms of the awning were raised and lowered by ropes through pulleys. On the end of each cross-arm was a short piece of pipe large enough to slip freely up and down the vertical pipes attached to the wall. These were attached to the short horizontal arms, and they in turn were attached to the long pipe to which the front of the awning was attached along the street side. When fully raised, the awning lay flat against the building and when fully lowered, it was approximately parallel with the surface of the street. At the time of the accident the awning was neither fully lowered nor fully raised, but was "at half mast," as described by the Court of Appeals. We discuss its exact position in detail hereinafter.

For the proper and approved installation of this type of awning, a piece of chain is attached to the wall of the building and to the approximate center of the horizontal cross-arms. This chain prevents the points of the horizontal arms where they are attached to the building from slipping down on the vertical slide rod when the awning is in a fully lowered position. No such chain was pro-

vided for the awning in question. The ropes and canvas of the awning were old and dilapidated. It had been installed and maintained as it was at the time of the accident, for a number of years prior thereto. The pipes and frame of the awning were in good condition. When the building ends of the horizontal bars were at the lowest position on the slide rods, they were only five feet, two and three-fourths inches above the sidewalk, but slanted upward toward the outer or street ends.

As it was installed and maintained, the awning violated two ordinances on the subject which had been enacted by the authorities of the City of Knoxville. One was in effect at the time of the lease or leases to Mrs. Clark, and the other was effective after December 1942. This accident occurred on August 28, 1943. The undisputed evidence is that this awning was only seven feet and a fraction of an inch above the sidewalk on the street side, and so violated both of the City ordinances on the subject. We think the Court of Appeals was in error in finding that the awning at the time of the accident was "at half-mast." The awning was lowered to the full extent, and the fact that it had no restraining chain permitted the ends of the horizontal bars at the building end to slip down the sleeve to a point where the horizontal bars at the building end were only five feet, two and three-fourths inches above the sidewalk. We reach the conclusion from the evidence of Garrett and Hall, who were eye-witnesses of the accident. The tenant, Mrs. Clark, testifies, and her testimony is undisputed, that she fully lowered the awning the morning of the accident: She qualified this on cross-examination only by saying that she did not know for how long the awning had been fully lowered.

This much is clear, that for a number of years the City had permitted the maintenance of the awning which did

not comply with its ordinances. The City had no actual notice of the hazard. The tenant of the building has been dismissed. There has been no appeal from that action. The tenancy was one from month to month. The owner of the building had maintained this awning in violation of City ordinances for an indefinite time before the commencement of the lease or leases to' Mrs. Clark, and the illegal maintenance continued through the date of the accident.

After overruling motions for directed verdict by the City at the end of plaintiff's proof and by defendant Brichetto at the conclusion of the evidence, the Trial Judge submitted the case to the jury and a judgment was returned against the City and the owner, Mrs. Brichetto, for $7,000. On appeal the Court of Appeals dismissed the action as to the defendant owner, and reversed and remanded as to the City of Knoxville. All parties filed petitions for *certiorari* which we granted.

■■ We think the motion of the City for a directed verdict made at the end of plaintiff's proof should have been sustained. The only predicate for the City's liability was its failure to enforce its "awning ordinances." Since this was clearly a failure to perform a governmental function, it could not be the basis for liability in tort. *Irvine* v. *Chattanooga,* 101 Tenn. 291, 294, 47 S. W. 419; *Conelly* v. *Nashville,* 100 Tenn. 262, 46 S. W. 565; *McCrowell* v. *Mayor and Aldermen,* 73 Tenn. 685, 690. Charge of nonenforcement of its ordinances, without more, is an insufficient predicate for the City's liability in tort. Dillon, Municipal Corporations (5 Ed.) vol. 4, sec. 1705, p. 2086; McQuillan, Municipal Corporations (2 Ed.) vol. 7, Revised, sec. 2964, p. 179; 43 C. J., Municipal Corporations, p. 1030, note 4; *Harman* v. *City of New*

*York,* 148 App. Div. 61, 131 N. Y. S. 1032; *Herman* v. *City of New York,* 148 App. Div. 61, 131 N. Y. S. 1032.

■ The statement of the Trial Judge, before submitting the case to the jury, that the City relies on its motion made at the end of the plaintiff's proof, put the City in exactly the same position it would have been in had it renewed its motion at the end of all the evidence, since it had introduced no evidence to effect a waiver of the former motion, and the evidence introduced by the Co-defendant did not touch the question of the City's liability.

■ There was no attempt to prove either actual or constructive notice to the City of the dangerous condition of the awning. Such notice was also an indispensable condition to charge the City. *Osborn* v. *City of Nashville,* 182 Tenn. 197, 185 S. W. (2d) 510; *Brown* v. *City of Chattanooga,* 180 Tenn. 284, 174 S. W. (2d) 466; *Jackson* v. *Pool,* 91 Tenn. 448, 19 S. W. 324; 43 C. J. 1030; *Fox* v. *Village of Manchester,* 183 N. Y. 141, 75 N. E. 1116, 2 L. R. A. (N. S.), 474.

■ ■ There remains to consider the liability of the defendant owner, Mrs. Brichetto. The awning had been installed originally, not by the tenant Mrs. Clark, but by a former tenant. Upon the termination of the former tenancy, the awning, being a fixture, became the property of the owner, and so far as liability to third persons was concerned, the owner was thereupon charged with the duty of its safe maintenance, whether the new tenant, Mrs. Clark, assumed duties with regard to the repair of the leased premises or not. *Beaman* v. *Grooms,* 138 Tenn. 320, 325, 326, 197 S. W. 1090, L. R. A. 1918B, 305; 36 C. J., Landlord and Tenant, p. 225, sec. 915. The rule is thus stated:

"A lessor of land who transfers the possession thereof in a condition which he realizes or should realize as in-

volving unreasonable risk of bodily harm to others outside the land is subject to the same liability for bodily harm subsequently caused to them thereby as though he had remained in possession'' Restatement; Law of Torts, vol. 2, p. 1013.

The illustration on page 1015 is also apposite:

''A leases to B a building, on which, as A knows or as a reasonably careful inspection would disclose, the rainspouts are in such bad condition that they discharge quantities of water upon the sidewalk of a highway upon which the building abuts. Six months after B has taken possession the water discharged from the rainspouts upon the highway, freezes and forms ice ridges upon which C, a traveler on the highway, slips and falls, sustaining serious harm. A is liable to C, irrespective of whether B has or has not covenanted to keep the building in good repair.'' Restatement Law of Torts, vol. 2, p. 1015.

In a California case holding the owner of certain premises, occupied by a tenant, liable in damages to a pedestrian on the sidewalk, where the injuries resulted from a defective awning, the Court said, in part:

''Where one has secured a privilege from the public on a condition, he cannot, after availing himself of the privilege, avoid his obligation to perform the condition by leasing the premises. Here, the awning was erected by a former owner of the building, and has been maintained by the present owner, doubtless for her own profit. The portion of the building under the awning was used for a purpose which may have made an awning very convenient; and the fact of its being there may have enhanced the rent. Under these circumstances, we do not doubt the liability of the defendant to any one who, without fault, was injured through her neglect to keep the

awning securely in place." *Jessen* v. *Sweigert*, 66 Cal. 182, 183, 4 P. 1188, 1189.

██ ██ The defendant owner failed in the duty of safe maintenance in two particulars, both of which existed at the commencement of the tenancy of Mrs. Clark, and continued to the date of the accident: (1) The height of the awning above the street was a violation of the pertinent City ordinances and the landowner is charged with knowledge of City ordinances. McQuillan, Municipal Corporation (2 Ed.) Vol. 2, Revised, sec. 689, pp. 719, 720; Dillon, Municipal Corporations (5 Ed.), Vol. 2, sec. 629, pp. 964, 965; 43 C. J., sec. 992, p. 575; *Mayor & Aldermen of Knoxville* v. *King*, 75 Tenn. 441, 445.

██ The safety chain or cord which would have kept the horizontal arm in a safe position and prevented its eastern building end from slipping to the lowest position on the vertical slide-rod was not installed.

The causal connection of the maintenance of the awning with the accidental injury of plaintiff's husband presented a jury question and was properly so treated by the Trial Judge.

Our difference with the Court of Appeals is that that Court concluded that the operation of the awning created the dangerous condition. It is our conclusion from the testimony of Garrett, Hall, Sehorn, Vann and Bolin, that on account of the defects in its installation and maintenance, safe operation of the awning was impossible. Even if Mrs. Clark had run out periodically to keep the horizontal bars at their proper position on the vertical slide-rods, the height of the awning from the street was, nevertheless a violation of the pertinent ordinances. A finding by the jury that the accident was proximately caused either by a displacement of the horizontal bars,

which would have been impossible if the safety chain had been installed, or by the maintenance of the awning in violation of the City ordinances, supported their verdict of negligence against the defendant owner.

As stated, petition for *certiorari* was filed by Mrs. Brichetto, and she has made 15 assignments of error. Many of these have been fully covered in what we have already said in this opinion. None of them, we think, presents matter of sufficient importance to constitute reversible error. The first assignment complains of the action of the Trial Judge in misstating a stipulation between the parties to the effect that it had been agreed that the awning was in the control of Mrs. Brichetto. This is immaterial error since we have held as a matter of law, that the awning was within the *control* of Mrs. Brichetto so far as its illegal maintenance and improper installation were concerned. Assignments 2 through 6 complain of the action of the Trial Judge in refusing to give certain special requests. We think his action was proper since the special requests do not properly state the law as we have heretofore shown in this opinion. Special requests presented in assignments 7 and 8, and which were refused by the Trial Judge, were, we think, fully covered by the charge given. Assignments 9 through 13 complain of the admission of certain evidence over defendant's objection, and we think these assignments should be overruled because none of them present matter of sufficient consequence or importance to justify a reversal. Assignment 14 complains of the admission of one of the City's ordinances. One of the issues in the Trial Court, which is apparently abandoned here, was whether or not the awning overhung the City sidewalk or was confined to the property of Mrs. Brichetto. In our view of the law and as we have stated it heretofore in this opinion,

the duty of the owner of the property as regards the awning insofar as the use of the public was concerned, was the same whether the sidewalk under the awning was a private sidewalk belonging to Mrs. Brichetto, or whether it was a public sidewalk belonging to the City of Knoxville. Assignment 15 complains of the action of the Trial Judge in overruling Mrs. Brichetto's motion for a directed verdict. There is no merit in this assignment for the reasons heretofore stated in this opinion, since we have held that the case was properly submitted to the jury on the question of Mrs. Brichetto's liability in the premises.

There is one matter on which this Court finds itself not entirely satisfied. It is incidental to the seventh and eighth assignments of error made by Mrs. Brichetto and concerns the remote contributory negligence of William O. Hargis. Although the Trial Judge fully, fairly, and completely charged the jury on the proposition of contributory negligence, the difference between remote and proximate contributory negligence as affecting the result, and the other rules of law related to those propositions, nevertheless, from the amount of the verdict and from the evidence of how the accident happened, we think there was some basis for the statement of counsel, made at the bar of the Court, that the amount of the verdict was excessive and evidenced prejudice in favor of the plaintiff. We therefore, under the rule made in *Railroad Co.* v. *Roberts,* 113 Tenn. 488, 82 S. W. 314, 67 L. R. A. 495, and since followed by this Court, suggest a *remittitur* of $3,500, and in the event that the plaintiff refuses to accept this *remittitur,* the case will be remanded and a new trial ordered as to her.

The assignment of the City of Knoxville to the effect that the Trial Judge erred in overruling its motion for a directed verdict is sustained. Thus modified the judgment of the Trial Court is affirmed and that of the Court of Appeals reversed. The costs of the appeal will be divided by the defendants City of Knoxville and Mrs. Brichetto. The costs of the Trial Court will be taxed there on the remand.

### On Petition to Rehear.

Petition to rehear has been filed by Defendant Myrtle Brichetto, which consists wholly of an attempt to have this Court reconsider its finding on the evidence. It is a matter of reargument merely, and insufficient to justify rehearing. *Louisville & N. Railroad* v. *United States Fidelity & Guaranty Co.*, 125 Tenn. 658, 148 S. W. 671; Supreme Court Rule 32, 173 Tenn. 886, 887.

Petitioner copies certain excerpts from the transcript to support her contentions. It is sufficient to say that these excerpts do not contain the evidence upon which this Court based its conclusion that the jury was warranted in holding Petitioner liable for maintaining the awning in a dangerous condition. As we undertook to state in the former opinion, it was the absence of the safety chain and not the condition of the ropes, used for raising and lowering the awning, that was the predicate of liability.

(1) Vann, as an expert witness, testified that for proper and safe installation and maintenance, the type of awning involved here should have had a safety chain or device to prevent the horizontal arm, at the building end, from slipping down to the lowest point on the sleeve.

That no such chain was on this awning at the time of the accident, is undisputed.

(2) Garrett testified that at the time. of the accident the building end of the horizontal bar was down at the lowest point on the sleeve, or 5 feet, 2¾ inches above the sidewalk. The witness Hall testified to the same fact.

(3) Garrett, who is 5 feet, 11 inches tall, passed under the outer or street edge of the awning which brushed his hair. Hargis, who was on the inside next to the building as the two men ran down the street, collided with the building end of the horizontal bar.

We think from this testimony which is undisputed and unimpeached, that the jury was warranted in finding that the maintenance of the awning without the safety chain, was the proximate cause of the accident.

Under Rule 32, *supra,* and for the reasons stated, the petition to rehear is denied.

Plaintiff has also filed petition to rehear on two grounds, namely; (1) Because of our dismissal of the City, (2.) because of our suggestion of a *remittitur.*

(1) In support of this ground, it is insisted that under the Common Law count of the declaration there was such evidence of constructive notice as should have taken the case to the jury as against the City. This proposition was fully argued and considered before the delivery of our former opinion. We think the record shows no such constructive notice, as would have supported a verdict against the City. It is not even conclu- sively proved that the awning overhung the City side- walk at all. There is strong evidence that the awning was wholly within the property lines of Mrs. Birchetto, and the photographs introduced seem to support that fact.

Of course the Common Law duty of the City with respect to the maintenance of its streets and sidewalks is limited to them and does not extend, so far as any authority which has been produced discloses, to adjacent property, and if it be admitted that the awning did extend over the City sidewalk, then to support the contention that the City had constructive notice of the dangerous and defective condition of the awning, there would have to be some evidence that the condition of the awning had become notorious by reason of other accidents, or that there had been a failure to inspect when the City was under a duty to inspect, or some other evidence upon which a finding of constructive notice can be based. There is absolutely no such evidence in this record.

(2) While it is true that there was no specific assignment here that the verdict was excessive, there were general assignments which would cover that error and the excessiveness of the verdict was vigorously argued and its reasonableness equally vigorously defended at the bar of this Court. In a matter so fundamental as the amount of the judgment, we think no specific assignment was necessary to justify this Court in undertaking to carry out its conception of justice between the parties.

While the Court "Need not consider" (*Hawkins* v. *Hubbell*, 127 Tenn. 312, 315, 154 S. W. 1146, 1147), matters on which no error is assigned it is not, by the absence of a specific assignment, precluded from looking to a question presented to the Trial Judge as one of the grounds for motion for new trial.

Petition denied.