CHARLES JONES, Individually and d/b/a Orange Mound Undertaking Co., Plaintiff-in-Error, v. GEORGE P. AGNEW, Father and next of kin of Mary Jane Agnew, Defendant-in-Error.—274 S. W. (2d) 821.

Western Section at Jackson. July 13, 1954.

Petition for Certiorari denied by Supreme Court, December 16, 1954.

Harold R. Ratcliff and Patrick Johnson, both of Memphis, for plaintiff in error.

Hunter Lane, of Memphis, for defendant in error.

CARNEY, J. Appeal by Charles Jones, d/b/a Orange Mound Undertaking Company, from a judgment of

$25,000 in favor of the plaintiff below for the death of Miss Mary Jane Agnew.

The deceased, who was 39 years of age and employed at a salary of $300 per month with the Railway Express Company, was killed on the morning of January 14, 1953, while walking across Lamar Avenue, in Memphis, Tennessee. She was struck by an ambulance owned by the defendant, Charles Jones.

At the time of the fatal accident the ambulance was being driven by John Brown, accompanied by James Duckett, both employees of the defendant, Jones, and was enroute to John Gaston Hospital on an emergency call to pick up an unidentified woman, who was in the ambulance at the time Miss Agnew was killed.

The negligence of the driver of the ambulance, Brown, as the proximate cause of the death of the deceased is not questioned on this appeal.

The primary question presented to this Court by the several Assignments of Error is whether or not there was material evidence to support a verdict by the jury imposing liability on the defendant, Charles Jones.

The defendant, Jones, testified that Brown was employed solely to help around the undertaking establishment while going to school under the G. I. Bill of Rights to learn embalming, and to help clean up and to answer the telephone. Jones further testified that he had given express and explicit instructions to Brown not to drive any of the vehicles belonging to the undertaking establishment. Jones also testified that he had three ambulance drivers who were licensed drivers and who were regularly employed as such, among them James Duckett, who was on duty at the time of the fatal accident.

Jones also testified that he had told his General Manager, Donald Thomas, that Brown was not to drive any of the vehicles. Jones was at home and did not know about any of the circumstances or events leading up to the death of Miss Agnew.

Donald Thomas testified that he was a nephew of Charlie Jones and the Manager of the undertaking establishment; that Brown was employed only to work around the undertaking establishment, to answer telephone calls, to clean up, and to learn embalming under the G. I. Bill of Rights; that Brown had no authority to drive any of the funeral or ambulance equipment; and that he also knew that Brown had no driver's license and was not authorized to drive. Thomas, the General Manager, further testified that on the morning in question Duckett was in charge of the business when the emergency call came to pick up the unidentified woman, but that Duckett was hired only for the purpose of driving ambulances and had no authority to sell caskets or do anything else pertaining to the management of the business. Thomas further testified that he felt that Brown was not capable of driving an ambulance and that is the reason he did not authorize him to drive. Thomas stated that Brown had permission to sleep at the undertaking establishment, but was not required to do so.

James Duckett, the regular ambulance driver of Charles Jones, testified substantially as follows: He was 27 years old; that in January 1953 he was employed by Charlie Jones to drive ambulances, hearses, etc., for the Orange Mound Funeral Home, and that on the night of January 13, 1953, and the morning of January 14, 1953, he was on duty at the Funeral Home and was awakened and informed by Brown that there was an emergency

ambulance call to pick up the unidentified woman at a certain location in Memphis; that while he was dressing he heard Brown outside starting the ambulance; that when he got outdoors Brown was under the wheel and had the motor running; that he asked Brown to move over and he refused to let him (Duckett) under the wheel; that Brown started off in the ambulance and he got in on the other side; that they drove to the designated location at Buntin and Park Streets in Memphis, picked up the woman who was supposed to have "fallen out", and placed her in the ambulance; that they did not know whether she was alive or dead; and they started to John Gaston Hospital with her. Duckett further testified that he knew that Brown was not supposed to drive the ambulance and that after they picked up the woman he insisted on driving, and Brown refused to turn the ambulance over to him; that he did not physically try to take the keys away from Brown and did not know whether he could have taken them or not; that the siren on the ambulance was blowing on the trip to John Gaston Hospital, the lights were on, and before they got to the hospital the unfortunate accident happened, which resulted in the death of Miss Agnew. He further testified that Brown was driving only 35 to 40 miles per hour, and that he used his brakes and that he tried to avoid hitting Miss Agnew, but that she stepped back in front of the ambulance and was killed.

Other testimony indicated that the wheels of the ambulance skidded something over 100 feet and that she was knocked or carried some fifty feet down the road from the point of impact and was almost instantly killed, and that the ambulance was going at a very rapid rate of speed at the time it struck her.

Brown was not a party-defendant to the suit, was not present at the trial, and the evidence indicated that he was in Illinois and not available as a witness to either side.

Plaintiff-in-error, Jones contends that the presumptions of agency raised by ownership or registration of a vehicle involved in an accident are rebuttable and that, in substance, the evidence conclusively shows that Brown had no authority to drive said vehicle and was not acting within the scope of his employment and authority at the time of the collision, and that, therefore, the owner, Jones, was not liable.

Our Courts have stated that the statutory presumptions of agency created by proof of registration disappear when positive evidence of the ownership and operation of said automobiles is introduced, and testimony may not be disregarded arbitrarily or capriciously, and the testimony of a witness, who is not discredited in any of the modes recognized by law, must be accepted as true. Phillips-Buttorff Mfg. Co. v. McAlexander, 15 Tenn. App. 618, 625, 627.

However, as expressed by Judge Felts in Good v. Tennessee Coach Co., 30 Tenn. App. 575, 209 S. W. (2d) 41, 44, the enactment of Sections 2701 and 2702 did not affect the pre-existing general rule of the common law that proof of the master-servant relationship between the owner and the driver of an automobile could be made by circumstantial evidence. The general rule was announced as follows:

"* * * That common law rule was, and still is, that a prima facie case of respondeat superior, or the relation of master and servant, may be made by evidence of these circumstances: (1) that defendant was owner

of the offending vehicle; (2) that it was being operated by a person generally employed by the owner as his servant; and (3) that at the time of the accident the vehicle was being operated under conditions resembling those which normally attended its operation in the master's business. Frank v. Wright, 140 Tenn. 535, 205 S. W. 434; Western Union Tel. Co. v. Lamb, 140 Tenn. 107, 203 S. W. 752; cf. Davis v. Newsome Auto Tire & Vulcanizing Co., 141 Tenn. 527, 213 S. W. 914; East Tennessee & Western North Carolina Motor Transp. Co. v. Brooks, 173 Tenn. 542, 121 S. W. (2d) 559.''

Likewise, from H. G. Hill & Co. v. Squires, 25 Tenn. App. 164, 153 S. W. (2d) 425, 427, the following quotation is made with approval from the unpublished case of Pinnacles Sales Co. and Bill Renfro v. Sam Pat Thompson, Admr., Knox Law, decided January 1940, and writ of certiorari denied by the Supreme Court, to wit:

''In that case the court said: 'The presumption of law disappears in the face of substantive evidence to the contrary, provided the evidence is not impeachable from the record, but circumstantial evidence may contradict the positive testimony and corroborate the presumption. If this were not the fact it would be impossible to convict the defendant when he was of a mind to deny proven circumstances. The inference arising from the circumstantial evidence is of higher evidential quality than a mere presumption of law; a logical and legitimate inference arising from proven circumstantial facts cannot be destroyed as a matter of law by the positive testimony of witnesses; there is then established a conflict of testimony to be determined by the jury.

We do not think it necessary to enter into a review of the authorities to establish this point.' "

In the case at Bar the defendant, Jones, admitted owning the ambulance; he admitted that Brown was regularly employed by him; and the proof is clear that at the time of the accident the ambulance was being operated under conditions resembling those which normally attended its operation in Jones' business. We think these facts made out a prima facie case of respondeat superior and it was for the jury to decide whether or not they believed the testimony of the defendant, Jones, and his witnesses that the said Brown was driving said ambulance without authority, express or implied, from Jones and over the objections of Duckett.

In our opinion the Trial Judge properly overruled the Motion for a Directed Verdict at the close of all the proof. See also McMahan v. Tucker, 31 Tenn. App. 429, 216 S. W. (2d) 356.

The jury returned a general verdict in favor of the plaintiff, and we think there was material evidence not only to support the verdict of the jury on the theory that the driver, Brown, had express or implied authority from the owner, defendant, Jones, to drive said ambulance at the time of the collision, but also there is material evidence to support a verdict of the jury in favor of the plaintiff on the theory that the ambulance driver, Duckett, was guilty of negligence which was the proximate cause of the death of plaintiff's intestate in that he permitted Brown to drive the ambulance when he knew he had no driver's license and was incompetent to drive said ambulance on the streets of Memphis. See Elkin Motor Co. v. Ragland, 6 Tenn. App. 166; Greer

v. McKee, 13 Tenn. App. 625; Potter v. Golden Rule Grocery Co., 169 Tenn. 240, 84 S. W. (2d) 364.

Assignment of Error No. 1 must be overruled.

Assignments of Error No. 2, No. 3, No. 4, No. 5, and No. 6 relate to the failure of the Trial Judge to grant several Special Requests on the trial below. We have considered these several requests, together with the charge actually given by the Trial Judge. In our opinion, the charge as given by the Court substantially covered the matters contained in these several requests and properly presented to the jury the issues to be determined. It does not affirmatively appear that the errors complained of affected the results of the trial, and said Assignments are overruled. Code Section 10654.

Also, Assignments of Error, No. 7, No. 8, No. 9, No. 10, and No. 11 insist that certain portions of the Judge's charge were error. From our consideration of the charge as a whole, together with the evidence and the pleadings and the entire record, it does not affirmatively appear that the errors complained of affected the results of the trial, and they are respectfully overruled. Code Section 10654.

Assignment of Error No. 12 insists that the Trial Judge should have granted a Motion for a New Trial on the ground of newly discovered evidence. It appears that Police Captain Brasher testified on direct examination that he talked with the defendant, Jones, after the accident. Jones denied that he had ever seen Captain Brasher. After the trial Captain Brasher admitted that he was probably wrong in his testimony that he had talked to Jones himself, but that he had talked to a representative of the Orange Mound Undertaking Company, probably Donald Thomas. It appears, however,

that Captain Brasher did not purport to testify to any conversations with the defendant, Jones, but merely said that he talked to him. We do not see any such prejudice to the defendant's case from this instance of mistaken identity as to require the Trial Judge to grant a Motion for a New Trial.

Some of the questions by the jurors to the ambulance driver, Duckett, indicate that they doubted his story that Brown was driving against his (Duckett's) will and over his strenuous objections, and the Trial Judge, in over-ruling the Motion for a New Trial, indicates that he found Duckett's testimony along this score hard to believe. From our reading of the record, we, too, think that the evidence preponderates against the testimony of Duckett on this point.

He had ample opportunity, when the ambulance stopped to pick up the patient, to take charge of the ambulance as he said he was required to do. He didn't take charge of the ambulance, and the very thing hap-pened which he should have anticipated if he permitted an incompetent person to drive the ambulance over the streets of Memphis; namely, that some person might be run down and killed.

It results that all Assignments of Error must be over-ruled, and judgment will be entered in this Court in favor of the plaintiff below against the plaintiff-in-error, Jones, for $25,000, together with interest from October 26, 1953, the date of overruling the Motion for a New Trial. The plaintiff-in-error and surety on his appeal bond will pay the costs of this appeal.

Avery and Bejach, JJ., concur.