# MARIE J. SADLER, Administratrix, v. PAUL DRAPER. —326 S. W. (2d) 148.

Middle Section. January 12, 1959.

Rehearing denied March 27, 1959.

Certiorari Denied by Supreme Court July 27, 1959.

2

4

6

Goodpasture, Carpenter, Dale & Woods and Wirt Courtney, Jr., Nashville, for Marie J. Sadler, Admx.

Martin & Cochran, Carmack Cochran, John D. Whalley, and Joseph Martin, Jr., Nashville, for Paul Draper.

FELTS, J. This was an action brought by Paul Draper for damages for personal injuries sustained from being struck by a Ford automobile, owned by E. B. Sadler, in charge of his employee Charles Foxall, and driven by Malcolm Crenshaw. Suit was brought against all three of them, Sadler died, and the case was revived against his administratrix, Mrs. Marie J. Sadler.[1]

Sadler, doing business as Sadler Motor Company, was operating in east Nashville a used car lot, or an open lot where he kept and dealt in used cars. Foxall and Crenshaw, colored men, lived in the neighborhood of this lot, and Foxall was regularly employed there by Sadler as a porter and to wash and take care of the cars, and was permitted to use first one and then another of them to go back and forth from his home to work.

Sadler acquired this Ford car in a trade with one Gregory on December 30, 1950, and the registration of it had not been changed to Sadler's name when the accident happened. The car's locks were out of order, neither its doors nor ignition could be locked, and it could be taken by anyone from the lot. To guard it against theft, Foxall took charge of it, drove it to his home that night (Dec. 30), and kept it in his control until he let Crenshaw have it.

[1] Mrs. Sadler has since married a man named Farmer, and is sometimes referred to in this record as Mrs. Farmer.

The accident happened about 6:30 P.M. January 1, 1951. Plaintiff Draper had parked his car in front of his drug store on the south side of Woodland Street. He had put some ice cream and Coca Colas in the trunk of his car, and was closing it, standing behind the car, when this Ford car, driven eastward on Woodland Street by Crenshaw, drunk and asleep, swerved to the side, struck plaintiff and his car, and crushed his body between the two cars.

He charged in his declaration that his injuries were caused by the combined negligence of all the defendants; and, by several counts, sued Sadler as master for the negligence of his servant Foxall in entrusting the car to Crenshaw, knowing he was unfit, reckless, an habitual drunkard, and without driver's license; and for the negligence of Sadler, or of his agent, in entrusting the car to Foxall, knowing he was likewise unfit and associated with others of like character, and that the car, in his or their hands, would endanger others on the highway.

Crenshaw made no defense. Foxall and Mrs. Sadler, represented by the same counsel, filed a joint plea of not guilty, and also separate pleas, in response to the Trial Court's order, upon plaintiff's motion, requiring defendants to plead their defenses specially, under our statute (T. C. A. sec. 20-921).

There was a verdict and judgment for plaintiff against all the defendants for $85,000. Crenshaw and Foxall acquiesced, neither sought a review of the judgment; and Mrs. Sadler alone appealed in error, and has assigned errors. She first insists that the Trial Judge should have directed a verdict for her at the close of plaintiff's proof, and also at the close of all the proof, because there was

no evidence to charge Sadler as master for the wrong sued for.

In reply, Draper contends that Mrs. Sadler cannot maintain this insistence, (1) because she waived her motion for a directed verdict made at the close of plaintiff's proof, by adducing evidence, ostensibly only for Foxall's, but really for her own, defense, and did not renew her motion at the end of all the proof; and (2) because there is ample evidence to charge Sadler as master and to support the verdict against his administratrix, Mrs. Sadler.

We think this contention must be sustained. The bill of exceptions shows that Mrs. Sadler and Foxall each moved for a directed verdict at the close of plaintiff's proof. After hearing arguments, the Trial Judge overruled these motions. Thereupon, counsel for Mrs. Sadler and Foxall stated that she rested and he would introduce evidence in behalf of himself only; and upon calling the first witness counsel said:

"Mr. Carpenter: If your Honor please, I offer this witness and all others in behalf of Charles Foxall only."

Counsel then called, as witnesses, Sadler's brother and employee (Earl Sadler), the manager of his used car lot (Jerry Jones), his employee defendant Foxall, and others. Their effort was to disprove both the master-servant relation and the negligence alleged, and thus to discharge both Foxall and Mrs. Sadler; for where, as here, one is sued as master for the wrong of another as his servant, a discharge of the servant necessarily discharges the master. Loveman Co. v. Bayless, 128 Tenn. 307, 315, 160 S. W. 841.

When these witnesses were cross-examined to bring out evidence of the master-servant relation between Sadler and Foxall, Mrs. Sadler objected that she had rested, the case had been closed as to her, and she could not be affected by such evidence; and she now assigns error upon the admission of evidence, so elicited from Foxall, that Sadler furnished him an automobile as part of his contract of employment, and that he took charge of this Ford car for Sadler to guard it against theft. This assignment (No. II) is later referred to.

At the close of all the evidence, counsel renewed Foxall's motion, but not Mrs. Sadler's motion, for a directed verdict. The bill of exceptions shows that at the close of the cause the following occurred:

"Mr. Carpenter: If your Honor please, I have a matter to take up in the absence of the jury.

(Jury retires.)

### Motion

"If it please the Court, at the conclusion of the Plaintiff's proof, we made a motion to have Mrs. Farmer [Mrs. Sadler]—which your Honor overruled —which we relied upon in which we stated we would introduce no proof on her behalf and that the only proof that would be introduced would be on behalf of the Defendant Foxall.

"We now, if your Honor please, renew our motion *on behalf of the Defendant Foxall* for a directed verdict in this cause, there being no evidence or any inference of evidence considered in its strongest light available to the Plaintiff * * * and a verdict be returned in favor of the Plaintiff [defendant] against

the Defendant [plaintiff]. If your Honor please, I don't know as I need to argue that situation. It was argued fully in reference to Foxall at the conclusion of the proof. He was not driving. The car was not on his mission. It is shown here that Foxall was a man that did his job—

Argument Continued—

"* * * so we insist upon our motion as *to the Defendant Foxall at this time.*" (Italics ours.)

It appears learned counsel for Mrs. Sadler intended not to renew her motion but to rely on the one that had been made for her and overruled at the close of plaintiff's proof, and thereby avoid any adverse evidence adduced by Foxall. Apparently, it was their view that the defense, which they were managing for both Mrs. Sadler and Foxall, could be divided, and the case tried as to her as it stood at the close of plaintiff's proof and as to him as it stood at the end of all the proof, and thus give her, without any risk, a chance to succeed by the defense made for him.

We think this is a mistaken view of the rights of defendants under motions for directed verdicts. While no case has been cited to us, and we have been unable to find any, in this State dealing with the exact situation here presented, we think the applicable principle is clear and well settled, as will appear from a consideration of the rules governing direction of verdicts.

■ A motion for a directed verdict, like a demurrer to the evidence, is a common law device for separating law from fact, in order to test the legal sufficiency of the

facts in evidence; and the rules governing the two procedures, while different, are analogous in many respects. See Thayer's Preliminary Treatise on Evidence, (1898) 234-240; Hopkins v. Nashville, C. & St. L. R., 96 Tenn. 409, 422, 447-458, 34 S. W. 1029, 32 L. R. A. 354; Sands v. Southern R. Co., 108 Tenn. 1, 6, 64 S. W. 478; Coleman v. Bennett, 111 Tenn. 705, 710, 69 S. W. 734.

■■ One of such analogies is that the defendant had to demur at the close of plaintiff's proof and not later, and had to set forth in writing and admit all the facts which plaintiff's evidence tended to prove, with every reasonable inference therefrom; while the defendant may move for a directed verdict at the close of plaintiff's proof but cannot claim such a ruling, as a matter of right, without then resting his own case. At that point his motion merely invokes the Trial Judge's discretion, and not until all the evidence is closed may he demand a ruling *as of right*.

■ This common law rule of practice was well stated by Mr. Justice Gray in Columbia & Puget Sound R. Co. v. Hawthorne, 1892, 144 U. S. 202, 206, 12 S. Ct. 591, 592, 36 L. Ed. 405, 406, as follows:

"It has repeatedly been decided that a request for a ruling that upon the evidence introduced the plaintiff is not entitled to recover cannot be made by the defendant, as a matter of right, unless at the close of the whole evidence; and that if the defendant, at the close of the plaintiff's evidence, and without resting his own case, requests and is refused such a ruling, the refusal cannot be assigned for error."

■ Professor Wigmore has fully discussed the practice of directing verdicts at common law and has cor-

rectly stated it in the form of these three rules (9 Wigmore on Evidence [3rd Ed. 1940], section 2496, pp. 313-315):

"(1) In the first place, the opponent cannot claim a ruling by the judge, as a matter of right, if he makes the motion at the close of the proponent's case in chief *without then resting his own case.* At that point, he is only invoking the Court's discretion; not until the entire evidence is closed may he demand a ruling *as of right* (citing cases)."

"(2) In the next place, it follows that the opponent *waives no later right by going on to put in his own evidence* after the judge's refusal to rule against the proponent for insufficiency of evidence at the close of the proponent's case in chief. The opponent *may* therefore *renew the motion* at the close of the whole case on both sides, and is entitled to the benefit of the ruling, if in his favor at that time."

"(3) Conversely, however, he cannot take advantage of the judge's *original erroneous refusal* to direct a verdict for insufficiency at the time of the first motion, (a) if he does *not renew* the motion at the close of all the evidence, or (b) or if at the time of the final motion the ruling *correctly refuses* to order a verdict for insufficiency; for the Court is at that time entitled to decide upon a survey of the whole evidence; and this survey naturally renders any prior error immaterial. This is sometimes put upon the ground of *waiver;* but it is rather a necessary consequence of the discretionary nature and limited scope of the first ruling."

■■ The matter is usually stated in terms of *"waiver"* in our cases. They say that a defendant, moving for a directed verdict at the close of plaintiff's proof, must then rest, or he waives his motion by putting in proof; and that he must renew the motion at the end of all the proof, or he waives it; and that it must be determined upon the whole evidence. Nashville Railway & Light Co. v. Henderson, 118 Tenn. 284, 99 S. W. 700; John Gerber Co. v. Smith, 150 Tenn. 255, 259, 263 S. W. 974.

So, whether the matter be stated in terms of waiver or of the rules above quoted, it comes to the same thing: The defendant cannot demand a directed verdict, *as of right,* "unless at the close of the whole evidence"; for if he rests, as he must do, in order to make such demand at the close of plaintiff's evidence, that is the close of the case, as much so as where he renews his motion at the end of all the evidence.

■ Thus, the situation is simple where there is only one defendant, but it may be difficult where there are two or more defendants and one of them moves for a directed verdict at the close of plaintiff's evidence. While the practice in some states is governed by statutes or court rules, the weight of authority of cases at common law supports the rule that an application for a discharge of one of several defendants at the close of plaintiff's case is addressed to the sound discretion of the Trial Judge, to be exercised according to the circumstances of the case, bearing in mind that the introduction of further evidence may supply the defect in the case against such defendant.

Some of such authorities are: Sowell v. Champion (1838), 6 Ad. & El. 407, 112 Eng. Reprint 156, 2 Nev. & P. 627; Capital Traction Co. v. Vawter (1911), 37 App. Cas. (D. C.) 29, Ann. Cas. (1912D) 1059; Bates v. Miller, 2 Cir., 1943, 133 F. (2d) 645; cases cited in the Annotations, Ann. Cas. (1912D) 1061-1062, 48 A. L. R. (2d) 535-540.

In Sowell v. Champion, supra, Lord Denman, C. J., stated the rule thus:

"The application to a Judge, in the course of a cause, to direct a verdict for one or more of several defendants in trespass is strictly to his discretion; and that discretion is to be regulated, not merely by the fact that at the close of the plaintiff's case no evidence appears to affect them, but by the probabilities whether any such will arise before the whole evidence in the cause closes. There is so palpable a failure of justice, when the evidence for the defense discloses a case against a defendant already prematurely acquitted, that such acquittal ought never to take place, but where there is the strongest reason to believe that such a consequence cannot follow" (112 Eng. Reprint 156).

In 53 Am. Jur., Trial, sec. 391, pp. 314-315, it is said:

"Whether such a direction might be given at the close of the plaintiff's case or should be postponed until the close of the whole case was at one time a disputed question, but it is now quite well settled that the matter rests in the sound discretion of the trial court, to be exercised according to the probability of the defendant's evidence supplying the defects in the plaintiff's case. Great caution should be exercised

by a trial court before directing a separate verdict for one of the several co-defendants, and it ought never to be granted unless it clearly appears that there is no evidence to affect the party in whose favor it is made.''

In such a case, it is important for the Trial Judge to consider the nature of the liability alleged against the several defendants. For instance, where they are charged with separate and independent acts of negligence, so that proof by one cannot touch the issue of the other's liability, the Trial Judge may properly exercise his discretion and direct a verdict for such other at the close of plaintiff's evidence if there is no evidence to make a case against him.

But where, as here, the defendants are charged with concurrent negligence and joint and several liability, such as that of master and servant for the servant's wrong, it would be improper for the Trial Judge to exercise his discretion to direct a verdict for the master at the close of plaintiff's proof, where there is a probability that the servant's proof might make out the case against both himself and the master; and such premature acquittal of the master might result in a complete denial of justice.

In City of Knoxville v. Hargis, 184 Tenn. 262, 198 S. W. (2d) 555, 558, relied on by Mrs. Sadler, plaintiff's husband was struck and killed by an awning hanging over the sidewalk. She sued the owner of the building and the city, alleging independent grounds of liability against each of them. At the close of plaintiff's proof the city moved for a directed verdict and rested. This

motion was treated as renewed at the close of all the evidence. The Court said:

"The statement of the Trial Judge, before submitting the case to the jury, that the City relies on its motion made at the end of the plaintiff's proof, put the City in exactly the same position it would have been in had it renewed its motion at the end of all the evidence, since it had introduced no evidence to effect a waiver of the former motion, *and the evidence introduced by the Codefendant did not touch the question of the City's liability*" (Italics ours).

Thus, the case was disposed of as if the city had *"renewed its motion at the end of all the evidence"*, and since the evidence by its co-defendant *"did not touch the question of the City's liability"*, and since, upon a survey of all the evidence at the close of the case, there was no evidence to make a case against the city, a verdict was directed for it.

Much the same may be said of Pikeville Fuel Company v. Marsh, 34 Tenn. App. 82, 232 S. W. (2d) 789, also relied on by Mrs. Sadler. There, Marsh sued the Company and its truck driver for damages for injuries alleged to have been caused by the driver's negligence in overturning the truck in which plaintiff and other employees were riding from the place of work to their homes. Plaintiff was an officer of the Company and its foreman in control of its truck and driver; and it was held that his failure to exercise such control over the driver caused the accident and barred his right to sue.

At the close of plaintiff's proof defendant Company moved for a directed verdict, its motion was overruled, and it rested. This motion was treated as not waived,

but as *renewed at the conclusion of all the proof.* The Court said:

> "We think that it was *clearly understood by both the Court and Counsel* for the plaintiff, that this defendant intended that its motion embrace the entire proceedings, as *effectively as if renewed at the conclusion of all proof"* (italics ours) (34 Tenn. App. 89, 232 S. W. (2d) 792).

Thus, it is seen, that in both of these cases—the Hargis case and the Marsh case—the Court, upon the record before it, treated defendant's motion, made and overruled at the close of plaintiff's case, *as renewed at the close of all the evidence,* and disposed of the motion upon a survey of the whole evidence at the close of the case.

So, neither of these cases supports Mrs. Sadler's claim that she can now rely on her motion, made and overruled at the close of plaintiff's proof and not renewed at the end of all the proof, and have the case tried as to her upon a partial view of the evidence—or as it stood at the end of plaintiff's proof.

Since she is seeking to put the Trial Judge in error for not sustaining her motion for a directed verdict, the burden is upon her to show affirmatively, upon the record, that her motion was made at the proper time— renewed at the end of all the proof—and improperly overruled. John Gerber Co. v. Smith, supra, 150 Tenn. 261, 263 S. W. 975. We think the record fails to show this and she must be held to have waived her motion.

But if we are mistaken, and if, as insisted for Mrs. Sadler, the statements of her counsel above quoted are to be taken as having "effectively renewed" her motion at the close of all the proof, then the motion must be

determined upon a view of the whole evidence, and there is no merit in her assignment of error upon the matters brought out in the cross-examination of the defense witnesses; for they were within the proper scope of cross-examination. Sands v. Southern R. Co., 108 Tenn. 1, 64 S. W. 478.

Upon such a view, we think there was ample evidence to make a case against Sadler for the jury and to support the jury's verdict against Mrs. Sadler, under either of two theories: (1) the statutory presumption that the car was being operated by Sadler's servant in his service; or (2) that he was liable as master for the negligence of his servant Foxall in entrusting the car to Crenshaw, knowing he was unfit, reckless, an habitual drunkard, and without a driver's license.

(1) It was undisputed that the offending car was owned by Sadler, though the registration had not been changed to his name. It was likewise undisputed that the injuries sued for were caused by the negligence of a person driving that car. Upon proof of these facts, without more, there arose, under our statute (T. C. A. sec. 59-1037), as amended by chapter 123, Acts of 1957, a *prima facie* case or presumption that the car was being operated by the owner or by his servant in his service.

It is true this injury occurred, and the action was brought, before the passage of this Act, but the case was tried thereafter. The Act, however, expressly provides that it "is in the nature of remedial legislation, and the legislative intent that it be given a liberal construction" (sec. 2); and that it "shall take effect from and after its passage, the public welfare requiring it" (sec. 3, Public Acts, 1957, p. 452).

In order to give full effect to the Act, it was necessary to apply it to all cases tried after its effective date, irrespective of whether they were brought before or after such date. It is generally held that such remedial acts do not deprive parties of vested rights and are properly applied to pending actions. National Life & Accident Ins. Co. v. Atwood, 29 Tenn. App. 141, 194 S. W. (2d) 350; Dowlen v. Fitch, 196 Tenn. 206, 264 S. W. (2d) 824, 266 S. W. (2d) 357, 41 A. L. R. (2d) 791.

It is objected for Mrs. Sadler that the evidence introduced negatived, or displaced, the statutory presumption and showed, as a matter of law, that the car was not being operated by Sadler's servant in his business.

But such presumption, or *prima facie* case, is not displaced, as a matter of law, by evidence to the contrary of the presumed fact, unless such evidence is uncontradicted and comes from witnesses whose credibility is not in issue. McConnell v. Jones, 33 Tenn. App. 14, 24-26, 228 S. W. (2d) 117, 122; McParland v. Pruitt, 39 Tenn. App. 399, 406, 407, 284 S. W. (2d) 299; Jones v. Agnew, 197 Tenn. 499, 502, 274 S. W. (2d) 825.

In this case the witnesses were impeached by cross-examination so as to involve their credibility and leave it to the jury to say what part of the testimony was to be accepted and what part rejected, and to find in accordance with the statutory presumption, or to the contrary, as seemed to them the more probable.

(2) We also think the jury could reasonably find from the evidence that Foxall was authorized, by Sadler's agent and manager of his used-car lot, to take charge of this car, to take it home with him over the weekend, and keep it to protect it for Sadler against

theft; that he did take charge of the car for this purpose and, in doing so, was acting as Sadler's servant and in his service or course of his employment.

Foxall, as such servant of Sadler, took the car in his control and kept and used it over the weekend until he turned it over to Crenshaw, or so the jury might find upon the evidence. It is true Foxall denied that he turned the car over to Crenshaw and claimed Crenshaw stole it from him. But evidence for plaintiff was that Foxall loaned the car to Crenshaw and this issue was fairly submitted to the jury under a proper charge.

There was little or no dispute in the evidence that Crenshaw was incompetent, reckless, an habitual drunkard, and without a driver's license; and that Foxall was well acquainted with Crenshaw, a cousin of his, and knew that Crenshaw was unfit to be entrusted with an automobile; and the evidence was that Crenshaw had been drinking all day and was under the influence of liquor when Foxall loaned him the car.

While an automobile is not a dangerous instrumentality if in proper condition and in competent hands, but, in defective condition or in hands of an incompetent person, it is a thing of danger; and an owner of an automobile owes a duty to the public not to entrust it to an incompetent person, and is liable to any person injured in consequence of a breach of such duty by the owner or his servant. Grant v. Knepper, 245 N. Y. 158, 156 N. E. 650, 54 A. L. R. 845; V. L. Nicholson Const. Co. v. Lane, 177 Tenn. 440, 150 S. W. (2d) 1069; Tennessee Coach Co. v. Reece, 178 Tenn. 126, 156 S. W. (2d) 404; Jones v. Agney, supra; same case, 38 Tenn. App. 427, 274 S. W.

(2d) 821; Annotation, 168 A. L. R. 1364; 2 Restatement of Torts, sec. 390, pp. 1058-1060.

We think the jury could reasonably find from the evidence that Sadler, by his servant Foxall acting in the scope of his employment, negligently entrusted this car to Crenshaw, knowing that Crenshaw was unfit, reckless, an habitual drunkard, and without a driver's license; that such negligence of Sadler, through his servant, was a proximate or legal cause of the injuries sued for; and that there is ample evidence to support the verdict against Mrs. Sadler.

Mrs. Sadler assigns error upon the Trial Judge's refusal to give her special request (No. 4) in charge to the jury, instructing them that if they found that plaintiff was standing behind his car double parked on the street, and if he was thus guilty of contributory negligence which proximately contributed to his injury, he could not recover.

We think the defense of contributory negligence was not available to Mrs. Sadler. Upon motion of plaintiff, she was ordered to plead specially the facts relied on by her as a defense, and she failed to plead the defense of contributory negligence. Therefore, such defense was not open to her and the requested charge was properly refused. Creekmore v. Woodard, 192 Tenn. 280, 241 S. W. (2d) 397; Olins v. Schocket, 31 Tenn. App. 346, 362, 215 S. W. (2d) 18.

Mrs. Sadler assigns some other errors upon the charge. All of them have been considered and we find no merit in any of them. We think they do not require detailed discussion. Some of them were criticisms of parts of the charge which were in line with what we have said

above; and such of requested instructions as were correct statements of the law were fully covered in the general charge.

Finally, Mrs. Sadler assigns for error that the Trial Court erred in overruling her motion for a new trial upon the ground that the verdict is so excessive as to indicate passion, prejudice, or caprice on the part of the jury.

At the time of the accident, plaintiff was 47 years of age, able-bodied, in excellent health, and lived with his wife in Nashville. He was engaged in the drug business, operating a drug store on Woodland Street, in Nashville. He managed the store, looked after most of the details of his work there, and was able to do 90 per cent of the work of running the business.

As above stated, plaintiff was standing behind his car, closing the trunk, when the Ford, approaching from the rear, crashed into him and his car, crushing the lower part of his body between the two cars. He received numerous injuries: cuts and lacerations on his head and face; multiple fractures of the pelvic bones, hip joints; punctures of the bladder; multiple fractures of both legs from his hips down to his ankles, with the broken and split fragments of the bones sticking through the skin in many places.

Unconscious, he was taken to Baptist Hospital and the doctors there called Dr. John Glover, an orthopedic surgeon. Dr. Glover found plaintiff unconscious, suffering from shock, his blood pressure dangerously low. Dr. Glover, put on as a witness, described the injuries in detail and his treatment of them. He treated plaintiff at the hospital for three or four weeks, during which time

it was necessary to use a frame with an electric motor and pulleys to turn his body every 30 minutes to prevent pneumonia. He then had plaintiff taken home, and there put upon a hospital bed, where he remained for several months.

Dr. Glover had been treating plaintiff continuously since the day of the accident to the time of the trial, more than 6½ years. During this period, it had been necessary to take plaintiff back to the hospital a number of times and operate on him. He has had a total of five operations. While he did not keep a complete record of all his expenses, he did show that his doctors bills, hospital bills, expenses for salaries for people to work in his place in the store and other expenses incident to his injuries, amounted to $21,104.65.

It appears plaintiff will never recover from his injuries. One of his legs is smaller, "withered", and cannot be amputated safely, and his other leg is very much disabled. He is unable to walk except on crutches. Dr. Glover estimated that his permanent disability amounted to more than 70 percent. During all of this period of more than 6½ years plaintiff has undergone much physical pain and mental suffering.

We need not further detail the evidence of plaintiff's injuries. Both he and Dr. Glover fully described them to the jury, and there was no cross examination of either of them. Nor did defendants offer any evidence to deny the nature and extent of such injuries. On the contrary, their counsel conceded that "the injuries in this case are most horrible—one of the worst cases I have ever seen from that standpoint * * *" (Tr. p. 3).

■ While the amount of the verdict seems large, yet considering the nature and extent of plaintiff's injuries, his pain and suffering, plus his pecuniary losses, we cannot say that the amount allowed was so excessive as to indicate passion, prejudice, or caprice on the part of the jury. We need not review other cases where as large or larger verdicts have been sustained for injuries comparable to plaintiffs. See Yellow Cab Co. of Nashville v. Pewitt, 44 Tenn. App. 572, 316 S. W. (2d) 17, 23, and cases there cited.

All of the assignments of error are overruled, the judgment of the Circuit Court is affirmed, judgment will be entered here for plaintiff Paul Draper against defendant Mrs. Marie J. Sadler, Administratrix of E. B. Sadler, deceased, for the amount of the judgment below with interest and the costs of the appeal. Judgment will also be entered against the surety on her appeal bond for the costs of the appeal.

Hickerson and Shriver, JJ., concur.

### On Petition to Rehear

An able and earnest petition to rehear has been filed by Mrs. Sadler. She first complains of our holding that she waived her motion for a directed verdict (made and overruled at the close of plaintiff's case) by not renewing it at the close of all the evidence. It is said that, as shown by the Hargis and Marsh cases, supra, no set form of words is required to renew such a motion; and that Mrs. Sadler's counsel made clear their intention not to waive her motion.

In both of those cases it appeared that counsel for the moving defendant intended to renew his motion at the

close of the case; that the proof put in by his co-defendant *did not touch the question of his liability;* and in both cases the Court treated the motion as renewed at the end of the case and disposed of it upon a survey of all the evidence.

It does not appear, however, that Mrs. Sadler intended to renew her motion. While it may be conceded she did not intend to waive it, it seems clear on the record that she intended not to renew it but to stand upon it, and disclaim responsibility for evidence adduced to discharge her co-defendant Foxall as servant, and at the same time get the benefit of such evidence, knowing a discharge of him as servant would also discharge her as master. Loveman Co. v. Bayless, supra.

So, we thought, and still think, she waived her motion; but assuming she did not, we considered the motion upon all the evidence and reached the conclusion expressed in our former opinion, that the proof made a case for the jury (1) upon the statutory presumption and (2) for negligence in entrusting the car to an incompetent driver. Jones v. Agnew, supra, 197 Tenn. 499, 502, 274 S. W. (2d) 825, 827.

Petitioner complains of this holding as to the statutory presumption. It is said that the presumption merely supplies the place of proof and disappears upon the introduction of proof contrary to the fact presumed; that the driver Crenshaw, who was called as a witness by plaintiff and "for whose credibility plaintiff vouches", proved he was using the car for his own purpose and not in the service of Sadler, and thus displaced the presumption.

■ This presumption, however, is not dispelled, as a matter of law, for the purpose of directing a verdict, by the introduction of evidence contrary to the fact presumed, unless such evidence is uncontradicted and comes from a witness whose credibility is not in question. McConnell v. Jones, supra; McParland v. Pruitt, supra, and cases there cited; Jones v. Agnew, supra.

 Nor is it correct to say that a party "vouches for the credibility" of a witness he introduces. While it is a rule that a party cannot impeach his own witness, as by proving his bad character, etc., he is not bound by the the witness' testimony or precluded from showing it to be untrue. 1 Morgan, Basic Problems of Evidence (1954) 63, 64; Hewgley v. General Motors Acceptance Corp., 39 Tenn. App. 553, 559, 286 S. W. (2d) 355.

As pointed out in our former opinion, all the witnesses, including the driver Crenshaw, who testified as to the circumstances under which he was using the car, were contradicted or impeached by cross-examination so as to involve their credibility and leave it for the jury to say what part of their testimony should be accepted and what part rejected, and to find in accord with the statutory presumption.

Petitioner also complains of our holding that the evidence made a case for the jury against Sadler as master for the negligence of his servant Foxall in entrusting the car to Crenshaw, knowing he was unfit to drive it. It is urged that Foxall had no authority to lend the car, and that however negligent he may have been in doing so, such negligence was outside the course and scope of his employment and Sadler could not be held liable therefor.

It may be conceded that Foxall, as Sadler's servant in charge of his car, had no authority to lend the car to any other person and that if he had lent it to any person not known to be unfit to have or drive it, Sadler would not have been liable for such person's negligence; but it does not follow that Sadler is not liable for Foxall's negligence in lending the car to Crenshaw, knowing he was drunk, reckless, and unfit to drive it.

We think that while Foxall, as Sadler's servant in charge of his car, had no authority to lend the car, he was under a duty not to entrust it to an unfit person, or rather to prevent such person from driving it, and such duty was within the course and scope of his employment; and that both the master and servant are liable for a breach of duty causing injuries to another person, or so the jury might find.

An automobile, in proper condition and in competent hands, is not a dangerous instrumentality, but, in defective condition or in incompetent hands, is a thing of danger to the lives of others on the highway; and an owner who, by himself or his agent or servant, entrusts his automobile to a person known to be incompetent or unfit to drive it, is liable for damages caused by such person's negligence in operating the automobile. Vaughn v. Millington Motor Co., 160 Tenn. 197, 201, 22 S. W. (2d) 226; Grant v. Knepper, supra; V. L. Nicholson Const. Co. v. Lane, supra; Jones v. Agnew, supra; 2 Rest., Torts, sec. 390; Annotation, 98 A. L. R. 1051; 134 A. L. R. 982.

In Grant v. Knepper, supra, an owner sent his motor truck with a driver and salesman to deliver goods. The driver permitted the salesman, who was incompetent, to

drive, and he ran the truck into a parked car beside the road. In an opinion by Cardozo, it was held that though the driver had no authority to permit the salesman to drive, still the owner was liable for the damages caused. Numerous supporting authorities were cited, including the English cases of Englehart v. Farrant & Co. [1897], 1 Q. B. 240-C. A.; and Ricketts v. Thos. Tilling [1915], 1 K. B. 644, 6 B. R. C. 683-C. A.

Likewise, in V. L. Nicholson Const. Co. v. Lane, supra, an agent or servant of defendant Company had the driver of its automobile to take him to his home after working hours and he directed the driver to take the car back to the Company's place of business. Instead, the driver went on a lark of his own, got drunk, and negligently caused the injuries sued for. It was held that, since the driver was known to be an habitual drunkard, the Company was liable for the negligence of its agent or servant in entrusting the car to such an incompetent driver.

Finally, petitioner complains of our overruling her sixth assignment of error, based on that part of the charge in which the Trial Judge submitted plaintiff's theory that Sadler was liable for entrusting his car to Foxall, knowing him to be unfit because of his habits of drunkenness and recklessness. It is said this was error because there was no evidence of such habits and because the latter paragraph of this part of the charge *assumed* that Foxall was unfit.

On the former hearing we fully considered this assignment and concluded that there was no prejudicial error in this part of the charge. We are still satisfied with our ruling on this matter.

The petition to rehear is denied at petitioner's cost.