**Ralph BUTTS, Complainant-Appellant,**

v.

**Odell BIRDWELL and Gallatin Oil Company, Inc., Defendants-Appellees.**

Court of Appeals of Tennessee,
Middle Section.

Feb. 23, 1973.

Rehearing Denied April 27, 1973.

Certiorari Denied by Supreme Court
Sept. 17, 1973.

Charles W. Bone, Goodall & Bone, Gallatin, for complainant-appellant.

Thos. Boyers, IV, Gallatin, for defendants-appellees.

## OPINION

SHRIVER, Judge.

This is an appeal from a decree of the Chancellor sustaining defendants' motion to dismiss at the conclusion of complainant's proof.

Ralph Butts filed his bill of complaint on June 19, 1972 in which he alleged that, on February 1, 1972, he entered into an agreement with defendant, Odell Birdwell, to purchase a 1970 International truck and tank trailer, together with accessories, etc., which was owned and operated by the defendant Birdwell in his business as a distributor of petroleum products for Shell Oil Company in Gallatin, Tennessee. A copy of the contract of sale is made an exhibit to the bill.

It is further alleged that, although the written contract of sale does not so specify, it was agreed and understood by the parties that the price paid by complainant included not only the value of the truck and accessories, but also included the good will of the established business of the defendant as distributor, and included his agreement not to compete with complainant in respect to said business.

It is further averred that, in spite of the foregoing agreement, approximately one month after entering into the agreement, the defendant, Odell Birdwell, joined the defendant, Gallatin Oil Company, Inc., as a distributor for said Oil Company and began to solicit his old accounts and to sell oil products to them and to service said accounts in violation of his agreement, and that this action was taken with the full knowledge and encouragement of the defendant, Gallatin Oil Company, Inc., in violation of T.C.A. 47–15–113, which provides for treble damages for the procurement of a breach of contract.

It is alleged that as a result of the foregoing violation of the agreement, complainant has been severely damaged.

It is further alleged that under complainant's contract with defendant Birdwell, he paid a cash consideration of $2,000.00 and agreed to make monthly payments of $500.-00, and that, in view of defendant's activities, any amount in excess of $2,000.00 that had already been paid would be unreasonable; however, he tendered into Court $500.00 representing the payment due June

1, 1972 and asked for a temporary injunction restraining defendant Birdwell from attempting to repossess the truck and equipment, pending the outcome of this suit.

The prayers of the bill are:

(1) For process;

(2) That the agreement between the parties be construed by the Court as a promise of the defendant Birdwell not to compete with complainant as to the business purchased from him, and that the Court declare the agreement to be null and void by reason of defendant's breach thereof, and that complainant be awarded judgment for $1,500.00, plus interest, representing the sum paid by complainant over and above the market value of the truck;

(3) That complainant be released from any further obligations under the contract;

(4) That complainant have and recover from defendant, Odell Birdwell, $25,000.00, or such lesser sum as is found to be proper compensation for losses suffered by reason of defendant's breach of contract;

(5) That complainant have and recover from defendant, Gallatin Oil Company, Inc., $25,000.00, or such lesser sum as the Court should find to be proper compensation by reason of that defendant's actions, and that defendant be held liable in treble damages for its violation of T.C.A. 47–15–113.

(6) For temporary restraining order to prevent defendants from attempting to repossess the truck in question;

(7) For interest, costs and attorney's fees; and

(8) For general Relief.

Defendant, Odell Birdwell, filed his answer admitting the purchase of the truck with oil tank and equipment for $9,500.00 and the execution of the contract, Exhibit A to the bill, but denied that he sold complainant anything other than the truck with the tank and equipment, and denied any oral or written agreement by which he promised not to compete with complainant in the oil business. He admits joining the Gallatin Oil Company as a distributor, but denies that the Gallatin Oil Company had any knowledge of any alleged agreement on his part not to compete with complainant. Defendant Birdwell filed his answer as a cross-bill seeking to recover the balance of the purchase price of the truck and equipment.

The defendant, Gallatin Oil Company, Inc., for separate answer, denied any knowledge of the allegations contained in complainant's bill with respect to an agreement with Odell Birdwell whereby Birdwell promised not to compete with complainant in the oil business, and denied any action on its part to induce or persuade Birdwell to enter into any unfair business practice or violate any agreement.

Following a hearing on oral testimony and documentary evidence, the Chancellor entered the following decree:

"This cause came on to be heard on this the 24th day of October, 1972, before the Honorable Edward M. Turner, Chancellor, holding the Chancery Court for Sumner County, Tennessee at Gallatin, Tennessee.

The defendants, Odell Birdwell and Gallatin Oil Company, Inc., at the conclusion of all the proof introduced by the plaintiff, Ralph Butts, moved that the action be dismissed, which after due consideration given to all the proof and evidence in the cause, the Court was of the opinion that said motion was well taken.

It is, therefore, ORDERED, ADJUDGED and DECREED, that the original action brought by the plaintiff, Ralph Butts, against the defendants, Odell Birdwell and Gallatin Oil Company, Inc., be and the same is hereby dismissed with the costs being adjudged against the plaintiff, Ralph Butts, for which let execution issue if necessary.

It is further ORDERED, ADJUDGED and DECREED that the

cross-complaint of Odell Birdwell be and the same is hereby dismissed against the cross-defendant, Ralph Butts.

It is further ORDERED, AD-JUDGED and DECREED that all monies paid into Court in this cause shall be retained pending appeals, if any, and until further orders of the Court.

This the 24th day of October, 1972.

/s/ Edward M. Turner
CHANCELLOR

APPROVED FOR ENTRY:

GOODALL & BONE

By_____
Attorneys for Plaintiff and Cross-Defendant

/s/ Thos. Boyers, IV.
Attorney for Defendants and Cross-Plaintiffs"

## ASSIGNMENTS OF ERROR

There are four assignments, as follows:

"1. The learned Chancellor erred in sustaining the appellees' motion to dismiss without having first required appellees to rest their case.

2. The learned Chancellor, in sustaining the appellees' motion to dismiss, failed to look to all of the evidence; to take the strongest legitimate view of it in favor of the opponent of the motion; to allow all reasonable inferences from it in his favor; and to discard all countervailing evidence.

3. The learned Chancellor erred in finding that the proof was not sufficient to show a clear, unambiguous and valid covenant not to compete.

4. The learned Chancellor erred in finding that the proof was not sufficient to make out a case against the appellee Gallatin Oil Company, Inc."

The record shows that on February 1, 1972, after a considerable period of negotiation, complainant, Ralph Butts, entered into an agreement with defendant, Odell Birdwell, to purchase the 1970 International two ton truck with a fifteen hundred gallon tank on it, together with other items that were attached thereto, which truck was being used by Mr. Birdwell in his business as a distributor of Shell Oil Company products on a route in Sumner, Macon and Trousdale Counties, Tennessee. The contract of sale, made exhibit to the bill, shows a consideration of $9,500.00 with a cash payment of $2,000.00, leaving a balance of $7,500.00, plus $750.00 finance charge, leaving a balance of $8,250.00 after payment of $2,000.00. It also provides for $500.00 monthly payments to liquidate said balance.

This written contract does not refer to the business which was being conducted by defendant Birdwell, and no mention is made therein of an agreement not to compete. However, complainant testified that, collateral to the written contract of purchase of the truck, there was a definite and well understood agreement that complainant was purchasing Birdwell's accounts with customers on his truck route in Sumner, Macon and Trousdale Counties, along with the good will established by him, and that as a part of the agreement it was definitely understood that Mr. Birdwell was not to compete with complainant in the sale of gas and oil products on the route and with customers with whom he had been doing business.

Complainant testified that this oral agreement, as a part of the transaction, was made in the presence of Mr. Richard Fenker of the Rail Oil Company, and Mr. Fenker testified as a witness confirming complainant's version of the transaction.

Among other things, the complainant testified that at the time he began negotiating with defendant Birdwell and at the time of the transaction in question, Birdwell was a distributor of Shell products for the Rail Oil Company and that he had a specific

territory for this distributorship, which consisted of farm accounts, house trailers, and certain other individuals and businesses that used fuel oil, gasoline and other oil products.

In response to a question as to what he purchased from Birdwell, he answered:

"I was purchasing a 1970 International two ton truck with a 1500 gallon tank on it, the accounts that went with it, anything that was attached to the truck, and the good will."

When asked if Birdwell indicated to him the value of the assets he was selling, he answered that Birdwell showed him several checks that he had received from the Rail Oil Company, one of them being for over $2,000.00, another around $1,600.00, and still another of around $1,900.00. He also answered that Birdwell represented to him that the business produced some $22,000.00 in income during the year before on which he paid income tax.

Complainant further stated that the contract was consummated on the 1st day of February, 1972, and that shortly after the 1st of March, he had loaded up a tank of gasoline to take to Cumberland Electric Membership Corporation at Portland, and that on the way he passed Roberts Trailer Court, which place he had previously served as a part of the truck route bought from Birdwell, and there he discovered Birdwell delivering oil to this customer. He then learned that Birdwell was not only delivering oil to that customer, but was soliciting his other former customers on the route complainant had purchased from him.

As stated hereinabove, Mr. Richard Fenker testified, stating that he was President of Rail Oil Company, with which Company defendant, Odell Birdwell, was associated for seven years. He stated that Birdwell owned a tank truck and bought petroleum products from said Company and sold to customers, and that the franchise covered Macon, Sumner and Trousdale Counties, in which Birdwell operated. He explained that Birdwell, in the parlance of the oil industry, was known as a tank-truck reseller, or peddler, and that he had quite a few grocery store accounts, farm accounts, and other consumer accounts where the Company had equipment for the reception of heating oil and other such products.

Mr. Fenker testified that the matter of turning over this route to Butts was discussed in his presence by the two men and that he told them that if Birdwell was going to give up the business, that he, Fenker, would be glad to approve Mr. Butts for the job, but that there was one thing that he would definitely insist upon, to-wit, that there must be a specific and definite non-competitive agreement by Birdwell, that the business he had been serving would not be interfered with. He also testified that Birdwell responded by saying that he, Mr. Fenker, had been good to him and that he would certainly not do anything to interfere with or to compete in said business. He quoted Birdwell as saying: "I am out of the gasoline business and you can count on it."

Mr. Fenker further testified that, in his opinion, the fair market value of the truck and equipment sold by Birdwell to Butts was somewhere between $2,500.00 and $3,500.00 as of February 1, 1972.

Mr. Monroe Brooks of the Gallatin Truck Sales testified that he sold the new truck to Butts in 1970 for $4,443.75, but this did not include all of the equipment. He further stated that his Company had serviced the truck in the meantime and he thought the fair market value of the truck on February 1, 1972 was in the area of $2,000.00 to $2,550.00.

The Chancellor, after hearing complainant's proof and argument of counsel on consideration of defendants' motion to dismiss at the conclusion of complainant's proof, stated as follows:

"THE COURT: All right. Of course, the Courts have always—it has

always been a general rule due to public policy—Courts have been very hesitant to uphold any kind of written agreement or oral agreement entering into the restriction of competition, the trade, and operation of the general business man in this day and society. I feel that certainly the preponderance of the proof in this case would clearly indicate to the Court that Mr. Butts—it was his clear understanding that in the purchase of this truck and tank and the tangibles attached thereto that it also included the route there in question, and that it would be free from interference by the defendant, Mr. Birdwell. I think certainly the preponderance of the proof is that this vehicle, the truck in question, the tank wagon, is not worth ninety-five hundred dollars. All the proof up to this point clearly shows to the satisfaction of the Court that that is not the fair value of that. It greatly exceeds the value of the vehicle that was purchased there as shown by Exhibit #1 to the original bill. Certainly, the Court can presume from that that Mr. Butts felt that this increase in the sales price was for the noncompetitive action on the part of the defendant; that he expected that. The proof also is clear to the Court that the defendant, Mr. Birdwell, did compete; that he has picked up several customers that were being served by him and, subsequently, for a short time by the plaintiff, Mr. Butts, and that he has certainly competed in the operation of this through various agencies involved in this territory in question."

The Court went on to say, however, that he was very conscious of the limitations that Courts have put on covenants not to compete in business and that it was his understanding that either an oral or a written agreement not to compete must be strictly construed, and that, in order to be upheld, there must be a clear meeting of the minds. He observed that he felt that he should view it favorably to the complainant because be was in sympathy with the com-

plainant's position; however, he did not feel that the alleged agreement was definite and certain enough to satisfy the requirements of a covenant not to compete.

The Court further observed that Mr. Birdwell had made the statement, in the presence of Mr. Fenker, that he had no intention of going back in the oil distributing or peddling business; that any restrictive covenant such as this must be very specific and he felt that such requirement might be met insofar as the territory was concerned since it might be assumed that the area involved was that that Mr. Birdwell was serving. He went on to say:

"However, I cannot find that the statement, which is uncontradicted, that Mr. Birdwell stated that he would not enter into—had no intention of entering into this business as long as he lived; that he was through with the operation —that the time element involved in the Court's opinion would be an unreasonable limitation. I don't think the Court, as suggested by counsel for the plaintiff, could arbitrarily hold that it was for a two year period. There is nothing to reflect a period such as that—simply the evidence as presented here. So, the Court does feel, and reluctantly so—not only in its position in sustaining directed verdicts but by the sympathies involved in the transaction here—I think Mr. Butts was the injured party simply because he did not have a clear understanding with the defendant, Mr. Birdwell, to the effect of entering into an ironclad written agreement."

The Court then observed that, in his judgment, the proof was not sufficient to show a clear meeting of the minds between the parties so as to establish a contract binding upon the parties which would meet the requirements that the Courts have laid down as guidelines in cases such as this. Therefore, the motion to dismiss was sustained, both as to Odell Birdwell and the Gallatin Oil Company, Inc.

With respect to the motion as it applied to the Gallatin Oil Company, Inc., he stated that he did not feel that the evidence as submitted was sufficient as to make out a case against that defendant and we concur in that conclusion of the Chancellor.

We also concur in the conclusion of the Chancellor that it was the clear understanding of the complainant that, in the purchase of the tank-truck and the tangibles attached thereto, there was also included the route of the defendant for the distribution of gasoline and oil products, and that it would be free from interference by the defendant Birdwell. We concur in the Chancellor's statement that a preponderance of the proof is that the fair market value of the tank-truck in question at the time of the sale was not as much as $9,500.00, and that part of the purchase price was given and received in consideration of the list and accounts of customers of the defendant and his agreement not to compete insofar as those customers and the route of the defendant for the sale of gas and oil products was concerned.

The Chancellor found, and we agree with his conclusion, that defendant Birdwell certainly did compete in the operation of the business in the territory in question. We also think the clear preponderance of the evidence establishes the fact that the defendant Birdwell knew full well that he had agreed not to compete in this particular territory with the business established with his customers along the route in the three Counties through which the route extended, and we think his action in invading this territory and soliciting his old customers after he had agreed not to do so amounted to a clear violation of the understanding between the parties and was such a flagrant violation of his moral and legal duty as that a Court of equity will not leave the complainant helpless and without a remedy.

Counsel for complainant cites and relies on the case of Hon v. Varnell, 214 Tenn. 634, 382 S.W.2d 535, wherein it was held that a motion to dismiss in equity cases is analogous to a motion for a directed verdict in law cases, and that, in an equity case, the defendant may not demand, as of right, that a motion to dismiss at the conclusion of complainant's proof be entertained by the Chancellor.

In that case the Court said that where the defendants did not rest their case when they moved, at the close of complainant's evidence, to dismiss an equity suit on the ground that complainant had failed to introduce sufficient evidence to make out a case, the Chancellor should have refused to entertain the motion and should not have determined the case on complainant's proof alone.

In the Hon case the Court quoted from Sadler v. Draper, 46 Tenn.App. 1, 3266 S.W. 2d 148, to the effect that the defendant cannot demand a directed verdict, as of right, unless at the close of the whole evidence.

In the Hon case, the Court quoted from 30A C.J.S. Equity, § 579, to the effect that dismissing a bill at the close of plaintiff's evidence before the defendant presents or rests his case, is not correct practice in equity in the absence of express provisions to the contrary. And the Court goes on to say that, in the absence of a statute to the contrary, we think that the correct rule in an equity practice is that a Chancellor should refuse to entertain a motion to dismiss made by a defendant at the close of complainant's proof unless the defendant rests his case, citing cases from several jurisdictions.

Counsel for complainant then argues that the learned Chancellor erred in sustaining the appellee's motion to dismiss, failed to look to all of the evidence, to take the strongest legitimate view of it in favor of the opponent of the motion, and to allow all reasonable inferences from it in his favor, discarding all countervailing evidence.

In response to this argument, counsel for the defendant, in reply to Assignment of Error No. 1, cites Rule 41.02 of the Tennessee Rules of Civil Procedure, which provides that after the plaintiff in an action tried by the Court without a jury has completed his presentation of the evidence, the defendant, without waiving his right to offer evidence in the event his motion is not granted, may move for dismissal on the ground that, upon the facts and the law, the plaintiff has shown no right to relief and the Court, as trier of the facts, may then determine them and render judgment against plaintiff or may decline to do so until the close of all of the evidence.

■ We are of opinion that Rule 41.02 is applicable to the extent that the defendants did not waive their right to offer evidence by making the motion to dismiss at the conclusion of complainant's evidence.

■ The comment of the Committee following Rule 41.01(2) is to the effect that the provisions of said paragraph were designed to eliminate the harsh rule formerly applied in Chancery cases to the effect that a defendant could not move for dismissal at the end of complainant's proof without resting his case and waiving his right to offer evidence. We are of opinion, however, that in passing upon the motion of defendant to dismiss at the conclusion of complainant's proof, the Chancellor is not relieved of the duty of looking to all of the evidence and of taking the strongest legitimate view of it in favor of the opponent of the motion, allowing all reasonable inferences from it in his favor. We are persuaded to believe that the correct rule of practice, as laid down in Hon v. Varnell, supra, is still the correct rule to be applied, with the modification that the defendant, in making said motion, does not waive his right to put on proof thereafter in the event his motion is overruled.

■ ■ The Chancellor correctly concluded that, in order to sustain his position,

complainant was bound to show with reasonable certainty the limits of the territory involved in the agreement not to compete as well as the time element or duration of said agreement, and it appears that the Chancellor decided the case against the complainant on the proposition that he did not show an agreement with any time limitation. As to the territorial limitation, we think there is no difficulty because it is manifest from the evidence produced thus far, that both Butts and Birdwell were talking about and dealing with the route in three Counties where Birdwell had established outlets for his products, and this is a reasonable limitation as respects a covenant not to compete. As to the time element, we are constrained to believe that a reasonable interpretation of the agreement, as shown by complainant's evidence, was that so long as Butts continued to operate on the route which had been established by Birdwell in Sumner, Macon and Trousdale Counties, and as long as he served the accounts he had taken over from Butts through the agreement of sale, Birdwell was obligated not to interfere with that established route and those customers while Butts continued to serve them. We are impressed that such an agreement not to compete is not unreasonable and is fairly enforceable in equity.

In Greene County Tire Co. v. Spurlin, 207 Tenn. 189, 338 S.W.2d 597, it was held:

"Generally, speaking a covenant which is incidental to the sale and transfer of a trade or business, and which purports to bind the seller not to engage in the same business in competition with a purchaser is lawful and enforceable, provided such covenants are reasonable and go no further than affording a thorough protection to the buyer."

"The question as to reasonableness of the restrains necessary to secure a buyer of a business fair protection in receiving the benefits for which he made the pur-

**938**

chase is to be determined by reference to the nature of the business, the manner in which it has been conducted and its territorial extent."

For these reasons we think the Chancellor was in error in dismissing complainant's suit against Birdwell at the conclusion of his evidence. On the other hand, as above stated, we concur in the conclusion of the Chancellor that complainant did not offer sufficient proof to sustain an action against the Gallatin Oil Company, Inc., hence, we concur in his dismissal of complainant's suit against said defendant.

As to the measure of damages, or, as to whether or not under the prayer for general relief the Chancellor would see fit to enjoin defendant Butts from interfering with or undertaking to service or sell to his former customers along the route which was involved and contemplated in the sale to Butts, and, whether he would see fit to order a reference to determine the amount of damages, is a matter that should be decided upon remand at the conclusion of all the evidence.

We think this course is preferable by reason of the fact that the parties and the Court put so much emphasis on the question whether an enforceable contract not to compete existed that the record was left incomplete and in an unsatisfactory condition as to the amount of damages suffered by complainant as the result of defendant Birdwell's breach of his contract.

For all the the reasons hereinabove indicated, Assignments Nos. 2 and 3 are sustained, the decree of the Chancellor is reversed as respects said assignments, and the cause is remanded to the Chancery Court of Sumner County for such other and further proceedings as may be necessary and proper in compliance with this opinion.

Affirmed in part, reversed in part, and remanded.

PURYEAR and TODD, JJ., concur.